JOHN PINKERTON *v.* ROBERT B. WOODWARD.

| 33 | 557 |
| 87 | 487 |
| 33 | 557 |
| 93 | 259 |
| 33 | 557 |
| 96 | 492 |
| 33 | 557 |
| 98 | 681 |

INN—DEFINITION OF.—An inn is a public place of entertainment for all travellers who choose to visit it. It is distinguished from a private lodging or boarding house in this : that the keeper of the latter is at liberty to choose his guests, while the innkeeper is obliged to entertain and furnish all travellers of good conduct and means of payment, everything which they have occasion for, as such travellers, on their way.

RELATION OF INNKEEPER AND GUEST—HOW CREATED.—Where the keeper of a public house professed to supply for hire the travelling public, at his house, with what travellers have occasion for, and a traveller, relying on such representations, went to his house to receive such entertainment as he had occasion for, the relation of innkeeper and guest was created.

RIGHTS, DUTIES, AND RESPONSIBILITIES OF INNKEEPERS AND GUESTS.—The rules

Points decided.

regulating the respective rights, duties, and responsibilities of innkeeper and guest have their origin in considerations of public policy, and are designed mainly for the protection of travellers and their property ; and the like considerations require that the innkeeper should be held to the responsibilities which, by his representations, he induced his guests to believe he would assume.

WHO ARE GUESTS.—A traveller who enters an inn as a guest does not cease to be a guest by proposing to remain a given number of days, or by ascertaining the price that will be charged for his entertainment, or by paying in advance for a part or the whole of the entertainment, or paying for what he has occasion for, as his wants are supplied.

FOR WHAT PROPERTY OF GUEST INNKEEPER IS RESPONSIBLE.—The responsibility of the innkeeper for the safe keeping of his guests' property extends equally to such as the guests have with them, in their immediate possession, at the moment of arrival at the inn, and that which subsequently arrives at the inn ; and the rule is in nowise different where the property is acquired by the guests subsequently to arrival at the inn.

IDEM.—Where, by general notice, the guests of an inn were requested not to leave money or articles of value in their rooms, but to deposit the same for safe keeping in the safe at the office, and a deposit of money and gold dust is made at the office by a guest, which is placed by the innkeeper in the safe, kept to receive the valuables of guests, this, in the absence of any other motive or reason shown for the transaction, will be deemed to be a deposit made by the guest and received by the innkeeper in pursuance of said general notice, and to enable the innkeeper the better to give that care and security to the property which is required of him in that capacity by law.

INNKEEPER INSURER OF GUESTS' PROPERTY.—The rule is, that an innkeeper is liable as an insurer of the goods of his guests committed to his care.

AMOUNT AND KIND OF PROPERTY INNKEEPER RESPONSIBLE FOR.—Where the innkeeper gave notice to his guests to deposit their money and valuables, without any limits specified, for safe keeping, and that he would not otherwise be responsible therefor, and accordingly a guest had deposited a large amount of money and gold dust, which had been received without objection by the innkeeper and put in the usual place of deposit at the inn of valuables for safe keeping ; in such a case it is too late for the innkeeper, when the property has been stolen, to object as to the kind or amount of the property so deposited, for the purpose of defeating or reducing a recovery for its value.

FOR WHAT PROPERTY AND WHOSE ACTS INNKEEPER IS RESPONSIBLE.—The responsibility of the innkeeper extends to all his domestics and servants, and to all the moveable goods and chattels and moneys of his guest which are placed within the inn, and is therefore liable for all losses of the property of his guest occurring within the inn, except those occasioned by the act of God or the public enemy, or the neglect or fraud of the guest.

JUDGMENT IN GOLD COIN FOR MONEY LOST AT INN.—A guest who had deposited with an innkeeper his money, consisting of gold coin, is entitled under the Specific Contract Act to recover judgment therefor payable in gold coin only.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

The defendant was sued as an innkeeper to recover for the loss of one hundred and sixty-eight ounces of gold dust, the property of the plaintiff; fifteen hundred dollars, gold coin, at the time of loss the property of the plaintiff's assignor, Robert Walker; and two hundred and twenty-seven and a half ounces of gold dust, at the time of loss the joint property of the plaintiff's assignors, Michael Lynn and Duncan McKinnon.

In his complaint the plaintiff

"Complains of Robert B. Woodward, defendant, and for cause of action alleges: That the said defendant, before and at the times hereinafter mentioned, was, and from thence hitherto hath been, and still is, an innkeeper; and as such innkeeper, the said defendant hath, for and during all that time, kept and doth still keep, a certain public inn for the reception, lodging and entertainment of travellers—that is to say, a certain inn commonly called and known by the name and sign of the 'What Cheer House,' in the City and County of San Francisco, and State of California.

"And plaintiff avers that said defendant, so being such innkeeper, the said plaintiff, on the first day of November, A. D. 1865, put up, and was then and there received into the said inn as a traveller, by the said defendant, and then and there brought into the said inn a certain purse or package containing one hundred and sixty-eight ounces of gold dust—the property of the plaintiff, of the value of twenty-six 92-100 dollars per ounce, amounting to the sum of four thousand five hundred and twenty-three 7-100 dollars lawful money of the United States. Plaintiff avers that defendant gave him notice, upon or shortly after his arrival in said house, that he would not be responsible, as such innkeeper in said house, for any money or articles of value that would be left by his guests in their own rooms; but that all the money and valuables should be deposited in the safe at the office in said house for safe keeping. And said plaintiff was by the defendant particularly requested not to leave his

money or valuables in his room in said inn. Plaintiff avers, that he did comply with said notice and request; and while he was a guest at said hotel, to wit: on or about the 11th day of November, A. D. 1865, he did deliver to one Seward W. Baker, the clerk and servant of defendant in said house, thereunto lawfully authorized by the defendant, the said one hundred and sixty-eight ounces of gold dust of the plaintiff, valued as aforesaid, to be put in the defendant's safe in said house, and there kept by him until he should demand the same. Plaintiff avers that said purse or package of gold dust aforesaid was then and there received by the defendant's said clerk and servant, and placed in said safe of said defendant, and in his custody and control, and has never since been returned to the plaintiff; and that the said plaintiff during all that time, abided as a traveller in said inn. Plaintiff avers that prior to the commencement of this suit, he did demand from said defendant, the return to him of said purse or package containing said one hundred and sixty-eight ounces of gold dust, valued as aforesaid, but that defendant neglects and refuses to return the same to him. Plaintiff avers that defendant, so being such innkeeper as aforesaid, not regarding his duty as such innkeeper, did not keep the said purse or package of gold dust aforesaid, so brought into and so being in the said inn, and so placed in said safe as aforesaid, safely and without diminution or loss; but, on the contrary thereof, the said defendant and his servants so negligently and carelessly behaved, and conducted themselves in that behalf, that afterwards, and while said plaintiff so abided in said inn as aforesaid, to wit: on or about the twelfth day of November, A. D. 1865, the said purse or package of gold dust aforesaid, was, by and through the mere careless negligence and default of the said defendant and his servants in that behalf, wrongfully and unjustly taken and carried away by some person or persons to the said plaintiff as yet unknown, and were and still are thereby wholly lost to said plaintiff."

The complaint contains similar averments in respect to the plaintiff's grantors and their said property, and that their right and title to said property, and their rights of action to recover for its loss, had been duly assigned to the plaintiff for valuable considerations before the commencement of the action.

The defendant in his answer denies:

" That, at the time or times mentioned in the first count of plaintiff's complaint, or while plaintiff was stopping at the What Cheer House, this defendant was an innkeeper, or kept a public inn for the reception, lodging and entertainment of travellers; he (defendant) admits that he was, during all the time mentioned in plaintiff's complaint, the owner of the building known and designated as the 'What Cheer House.'   *   *   *   *   *   On the contrary, this defendant avers that, at the time and times mentioned in the first count of plaintiff's complaint, and whilst plaintiff stopped at said What Cheer House as a lodger, he conducted and carried on said What Cheer House as a lodging house (but not as an inn) for the accommodation of lodgers, whether travellers or otherwise; that, within the same building where said lodging house was carried on by defendant was, at the time and times in the first count of plaintiff's complaint mentioned, and whilst plaintiff stopped at said lodging house, a restaurant or saloon, where people could, on application to the proprietors thereof, be furnished with food and drink, excepting intoxicating liquors, wines, ales, beer or cider.   That said restaurant or saloon was conducted, managed and carried on jointly by this defendant and Charles Quast and Charles J. Woodward, and for their mutual and joint benefit; that persons lodging at said What Cheer House were under no obligations, express or implied, to procure their food or drink, or both, at said restaurant or saloon.   That the said lodging house was not connected with said restaurant, nor managed or controlled by the

71

same proprietors. That defendant did not keep, at the time and times mentioned in plaintiff's complaint, nor whilst plaintiff stopped at said lodging house, a table for furnishing persons who lodged at said What Cheer House, with food; nor did he make any contract, express or implied, nor hold out to plaintiff that he would supply him with meat or drink, or any other thing than a room and bed for his comfort and convenience as a lodger.

" That said ' What Cheer House ' was at the time and times mentioned in the first count of plaintiff's complaint, and whilst plaintiff stopped thereat as a lodger, conducted as follows, to wit: persons stopping there, and who applied for a room and lodging, were required to pay for such room and lodging in advance, and persons eating at such restaurant, whether lodging at said What Cheer House or lodging elsewhere, or whether travellers or residing in said city and county, were required to pay (by the proprietors of said restaurant) for each meal as it was eaten; that the manner in which such lodging house and said restaurant was conducted as aforesaid was well known to plaintiff at the time and times mentioned in the first count of plaintiff's complaint and during all the time plaintiff stopped at said What Cheer House.

" This defendant denies, that while he was an innkeeper, plaintiff, on the first day of November, 1865, or at any time, put up or was received into said alleged inn, to wit: said ' What Cheer House,' as a traveller. On the contrary, defendant avers the fact to be that about the first day of November, 1865, and at the time mentioned in the first count of plaintiff's complaint, said plaintiff was received at said What Cheer House as a lodger, and not otherwise.

" Defendant denies, upon and according to his information and belief, that at the time plaintiff was so received as a lodger he was a traveller; defendant denies that said plaintiff, at the time or times averred in the first count of plaintiff's complaint, brought into the said ' What Cheer House ' one hundred and sixty-eight ounces of gold dust; admits

that said plaintiff at said time, to wit: November 11th, 1865, brought in said lodging house a purse or package which he said contained gold dust; that on a subsequent day, and after the same was lost as hereinafter averred, plaintiff asserted and claimed that said purse or package contained one hundred and sixty (160) ounces of gold dust; that the true and actual contents of said purse or package are unknown to defendant; and he denies, upon and according to his information and belief, that said purse or package contained one hundred and sixty-eight ounces of gold dust, or any number of ounces exceeding one hundred and twenty (120) or thereabouts; denies, and it is not true, that the gold dust mentioned in the first count of plaintiff's complaint, or the contents of said purse or package, was of the value of ($26 92-100) twenty-six 92-100 dollars per ounce, or that the same was worth any greater sum than fifteen (15) dollars per ounce; denies that the contents of said purse were of the value of four thousand five hundred and twenty-three 1-100 dollars ($4,523 1-100), or of any greater value than eighteen hundred dollars ($1,800); denies, and it is not true, that this defendant at any time gave to plaintiff or caused to be given to him the notice averred in the first count of plaintiff's complaint, or a notice that he would not be responsible as innkeeper in said house, or any notice as innkeeper. Defendant denies that he (defendant) requested plaintiff as averred in the first count of plaintiff's complaint. Denies that defendant or his servants at any time particularly or in any manner requested plaintiff not to leave his money or valuables in his room in said alleged inn or in said 'What Cheer House,' or in any manner notified plaintiff, or held himself out to plaintiff as an innkeeper.

"This defendant avers that, at the several times aforesaid, in conspicuous places in said house, were posted up printed notices or cards, copies of which are hereto annexed, marked 'A' and 'B' respectively.

"That by means of said printed cards, and in no other manner, did this defendant give notice to plaintiff, or make

any request of the purport, or to any similar effect, of the notice or request averred in the first count of plaintiff's complaint. That said notices or cards were posted up in conspicuous places in said What Cheer House, at and during all the times mentioned in plaintiff's complaint.

"This defendant admits, that said plaintiff did, on or about the eleventh day of November, 1865, deliver to the clerk and servant of this defendant, in said lodging house, a purse or package, which, he asserted, contained gold dust, but what amount of gold dust was contained therein, and what was the value thereof, defendant is ignorant and unable to state; and he denies, upon and according to his information and belief, that the same contained more than one hundred and twenty (120) ounces of gold dust; and denies, upon and according to his information and belief, that the contents of said purse or package exceeded in value eighteen hundred dollars ($1,800) lawful money of the United States. And this defendant admits and avers that said purse or package, and the contents, was, without being weighed or the contents thereof ascertained, deposited by the servant of this defendant in the safe mentioned in plaintiff's complaint, to wit: an iron and burglar proof safe, known as 'Tilton & McFarland's' safe.

"Denies, and it is not true, that defendant undertook or agreed to keep said package safely, or to return the same to plaintiff when thereafter demanded. On the contrary, he avers that the only undertaking or agreement he made with plaintiff concerning said package, was to the effect that defendant would deposit the same in said safe, and would take such reasonable care of the same as men of ordinary prudence would take of the same.

"This defendant admits, that the said purse and its contents have not been restored to plaintiff; avers the fact to be that on the morning of the thirteenth day of November, 1865, at or about three o'clock in the morning, the said package or purse mentioned in the first count of plaintiff's complaint, then being in said safe, and not having been

removed therefrom, and being subject to plaintiff's ·order, and said safe then being securely locked, and the key thereof in the pocket of the clerk of defendant, and said house being guarded by two honest, reliable and competent men, to wit: said clerk and a watchman; said safe then being in a well lighted room, to wit: the office of said 'What Cheer House,' lit with gas; the said clerk of this defendant, in charge of and guarding said safe and its contents (including the purse or package mentioned in the first count of plaintiff's complaint), was feloniously knocked down, rendered insensible by said evil disposed persons to defendant unknown, the key of said safe taken from his pocket by violence, and said safe feloniously opened and robbed by said evil disposed persons, who then and there feloniously stole and carried away from said What Cheer House, and to some place to the defendant unknown, of the contents of said safe, about thirty thousand dollars ($30,000) in value, including the said purse or package so averred to have been deposited therein by plaintiff, and including money belonging to defendant in part; that said robbery and theft was without the fault, connivance, carelessness or negligence of this defendant, or of any of his servants employed in or connected with the 'What Cheer House.' That, immediately upon said robbery being discovered, the fact was notified to the police department of said city; large rewards for the recovery of said money so stolen has been and was offered and advertised by defendant, and defendant and the police of said city and county have used the utmost diligence to recover the said purse or package, and the other· contents of said safe, so stolen as aforesaid, but have been utterly unable so to do. That, by means of and in consequence of said robbery and theft, defendant has been unable to, and he avers and insists he is thereby discharged from all obligation to, return said purse or package and its contents, or any part thereof, to plaintiff.

"And defendant denies, upon and according to his information and belief, that during all or any of the time mentioned in the first count of plaintiff's complaint, or at any

time, plaintiff remained or abided as a guest at said ' What Cheer House,' or in any manner therein except as a lodger.

" Defendant denies that he neglected or refused to return said package or purse or its contents, or any part of such contents, to plaintiff; avers that at the making of the demand averred in the first count of plaintiff's complaint, he (defendant) had not the said purse and contents, or any part of the said alleged contents, in his possession, or under his control; but, on the contrary, the same had been feloniously stolen, as hereinbefore averred.

" Defandant denies, and it is not true, that this defendant in any manner disregarded his duty as an innkeeper, or as a lodging house keeper, or in any manner, with reference to keeping said package or purse, or the contents thereof, safely. Denies, and it is not true, that he or his servants, or any of them, negligently or carelessly, dishonestly or otherwise improperly conducted or behaved themselves in connection with the said purse or package, or its contents, or the keeping thereof: denies, and it is not true, that said package or its contents was lost or carried or taken away through or by means of the carelessness or negligence, or default, of this defendant, or any of his servants or employés."

The answer contains similar averments and denials in respect to each of plaintiff's assignors. Exhibits A and B are as follows:

### " EXHIBIT A.
(" Mentioned in foregoing Answer.)
" SPECIAL NOTICE.

" The proprietor will not hold himself responsible for anything lost from the rooms.

" Deposit your money and valuables in the safe at the office.

| WHAT CHEER HOUSE. |
| :---: |
| DEPOSITS DELIVERED |
| FROM |
| 8 TO 11 A. M. |
| FROM |
| 2 TO 4 P. M. |

" Have your baggage checked in the Baggage Room.

" Be particular to lock and bolt your door, and extinguish your light before retiring to bed.

" Beds not reserved, unless paid for before 10 A. M.

" What Cheer House, San Francisco.

" R. B. WOODWARD,

" Proprietor."

" EXHIBIT B.

(" Mentioned in foregoing Answer.)

" R U L E S    A N D    R E G U L A T I O N S

" OF THE

" WHAT CHEER HOUSE,

" San Francisco, Cal.

" 1. Gentlemen will please register their names on arrival, and make known how they wish to room, whether by the day or week, and pay IN ADVANCE.

" 2. Gentlemen wishing to retain any particular bed or room, are requested to apply before 10 o'clock A. M., otherwise they cannot consider them as engaged.

" 3. Guests are particularly requested not to leave money or articles of value in their rooms, as the proprietor will not hold himself responsible for any loss that may occur.

" 4. Money and valuables should be deposited in the safe at the office for safe keeping.

" 5. Have your baggage, etc., checked in the Baggage Room.

" 6. Cast-off clothing will not be allowed to remain in any of the rooms.

" 7. Guests are requested to avoid the filthy practice of spitting on the carpets, smoking, lying upon the beds with their boots on, or defacing the walls by lighting matches, driving nails, or moving furniture.

" 8. Gentlemen will please extinguish their lights before going to bed.

" 9. Reading in bed positively prohibited.

" 10. All persons finding money, or articles of property, lost in the house, will deliver the same to the proprietor or bookkeeper, to be reserved till called for by the proper owner.

" 11. Any remissness or impertinence on the part of the servants should be reported to the proprietor without delay.

" 12. This house will be kept open all night.

" The Boarding Department is conducted on the European plan, at reduced rates.

TERMS IN THIS ROOM :

" Lodging per day, — cts.　Lodging per week, —.

" *Shower Baths Free ! !*

" R. B. Woodward,

" Proprietor."

On the trial there was evidence tending to prove that the plaintiff and his three companions, Robert Walker, Michael Lynn, and Duncan McKinnon, were residents of Canada, but had been mining at the Cariboo Mines in British Columbia. They left the mines with their gold dust and money, the result of their labors, and started on their journey home in Canada West. They came to San Francisco by steamer, and arrived on the first day of November, 1865, having no business here at all. It was a convenient route, and afforded them the opportunity of travelling by steam from Victoria to

San Francisco, and from the latter place to New York. They immediately went to the hotel called the "What Cheer House," of which the defendant was proprietor, and very shortly afterwards engaged passage by the Nicaragua route to New York, on the steamship America, which sailed on the 13th of November, 1865, and expected and intended to embark on her.

Walker had fifteen hundred dollars in gold coin, and the others had their respective bags of gold dust, the amounts being the same that are particularly stated in the complaint. The coin and gold dust were placed in charge of the hotel, and put by the clerk in a safe kept for that purpose, pursuant to the various notices, rules and regulations posted up in the public places around the hotel and in the rooms of the guests. A register of deposits was kept in the house by the bookkeeper, and the names of the depositors were entered in it, with a description of the articles, and date set opposite. This had been the custom of the house for years.

In the case of the plaintiff and his companions these formalities were observed, and all the proper entries made in the register, and the clerks of the house were perfectly informed that these were gold dust and coin, and memorandums to that effect were made in the register. The defendant did not live at the hotel, but exercised a general supervision over it, and chiefly depended on his agents and employés at the house.

That the rule and custom generally observed at the What Cheer House at the times the plaintiff and his assignors stopped there, was that persons stopping there, and who applied for rooms and lodging, were required to pay for such room and lodging in advance, and persons eating at the restaurant, (which was kept in the basement of the building, and managed and conducted by and for the benefit of defendant, Charles Quast, and Charles J. Woodward, but in the name of the defendant,) whether lodging at the What Cheer House or not, were required to pay for each meal as

72

it was eaten. This rule at the restaurant was not inflexible, however, and was not enforced as to the plaintiff, who settled for a portion of the meals eaten by him and his assignors with the clerk of the What Cheer House by general bill.

On the 13th of November, 1865, at 3 o'clock A. M., the safe of the What Cheer House, in which the treasures of the plaintiff and his assignors were deposited, was broken into, and their property stolen and carried away. The money and treasure was deposited in a safe known as a "Tilton and McFarland Safe." At the time of the robbery the combination lock was not turned on. Other than this, all usual and necessary precautions seemed to have been adopted for the safety of the treasure contained in the safe. A portion of the plaintiff's money was not brought by him to the What Cheer House on his first arrival, but was received by him and deposited, several days after, in the safe, as the residue had already been deposited.

The three others assigned their claims to Pinkerton, who brought this action against the defendant, as an innkeeper, for the amount of the loss.

Other portions of the evidence given on the trial are stated in the opinion of this Court.

The Court gave the following instructions, requested on plaintiff's part, to the giving of which the defendant at the time duly excepted, to wit:

" I. If the defendant, Woodward, at the time referred to in the evidence, kept open for the reception and entertainment of the travelling public, the house called the ' What Cheer House,' and there furnished travellers with those things ordinarily required whilst upon their way, he was an innkeeper, and subject to all their liabilities.

" II. An inn is a public house of entertainment, kept open for the reception and accommodation of travellers, and its character is not changed by the innkeeper's requiring lodgings to be paid for in advance, or meals to be paid for as ordered.

" III. A person who makes it his business to entertain travellers and passengers, and provide lodgings and necessaries for them, is a common innkeeper, whether he requires payment in advance, or at the time of furnishing articles, or afterwards.

" IV. If the defendant held himself out to the public as a person who, at the What Cheer House, entertained passengers and travellers, and provided them with lodgings and meals, he is responsible as an innkeeper, no matter what private contracts he may have had with others to assist him in conducting some part or parts of the entertainment prepared for his guests.

" V. If the plaintiff, and those whose claims he holds by assignment, were travellers and transient persons, and were received by the defendant at the ' What Cheer House,' as an innkeeper, the plaintiff and his assignors became the guests of the defendant, and the latter became responsible for the safety of all their property committed to defendant's care, whilst his guests, and defendant can only exempt himself from liability by showing that the loss was by the act of God or the public enemy, or the neglect and fraud of the owner or owners of the property lost.

" VII. If the defendant was an innkeeper, and the plaintiff and his assignors were guests of defendant, and travellers and transient persons, and as such committed their property and funds to the custody of the defendant and his agents, to be placed in a safe, according to the defendant's rules and regulations posted up in the What Cheer House, the defendant cannot excuse himself from restoring to the plaintiff such property and funds, by showing that the safe was robbed by unknown persons, either within or without the house.

" VIII. The liability of innkeepers is not limited merely to the personal baggage of guests, or merely funds sufficient for travelling expenses to their destination, but it extends to all articles of the guest which the innkeeper receives in his custody at his inn.

"IX. An innkeeper's liability is not affected by the fact that he is not paid a separate sum to take charge of the goods or money of his guests. The compensation to him for entertaining his guests covers the property. The care and custody of the goods is secured by the principal duty of the innkeeper to entertain his guests."

The Court was requested by the defendant to give the following instructions, which were severally refused and indorsed with the reason for such refusal. To such refusal the defendant at the time duly excepted, to wit:

"4th. The defendant insists that the contract of bailment which the law implies was entered into between Pinkerton, Walker, Lynn and McKinnon, respectively, and defendant, at the times they respectively delivered the two packages or purses containing gold dust, and the fifteen hundred dollars in coin, to the defendant, was a bare, naked bailment to keep the same for the use of the bailor, which in law is called *depositum ;* and insists that, as such a bailee, he (defendant) is not chargeable for a common neglect to take care of the same; but if the same was lost or stolen without gross neglect on his part (or that of his servants), the plaintiff cannot recover therefor.

["Not given. It does not purport to be a charge or statement of what the law is, but merely what defendant insists ·it is.]

"5th. Deposit is a bailment of property to be kept for the bailor, without recompense to be paid by the bailor or received by the bailee.

["Not given. It is thought to be a mere abstract proposition of law, not applicable to the case.]

"7th. The defendant might carry on in one part of the building, known as 'The What Cheer House,' a lodging house, and in another part an eating house, saloon or restaurant, if the two were conducted separately; that is, if the lodging house was conducted and carried on by defendant

solely for his exclusive benefit, and under his exclusive control, and the eating house, saloon or restaurant was conducted, carried on and controlled by the defendant, and others who were interested with him, and who had as much or more control of the management thereof as defendant, and who received a share of the profits, the fact that such business was carried on in the same building did not make defendant an innkeeper.

["Not given.   Thought to be of a tendency to mislead.]

" 8th. If you find, from the evidence, that plaintiff and his assignors, Walker and Lynn and McKinnon, at the time they respectively stopped at the What Cheer House, made a special agreement with defendant for the use of a room or rooms, or part of a room and bed, by the week, and paid therefor in advance, and were stopping at said What Cheer House, at the time of the deposit by them (or delivery by them to the clerk of defendant) of the gold dust and coin alleged to have been delivered, and were occupying rooms, or parts of rooms, and beds, under such special agreement, having paid therefor in advance for a week, said person and persons were lodgers, and not guests at an inn.

[" Not given for the same reason as the last.]

" 9th. If a person, upon a special agreement, boards or sojourns at an inn, and is robbed, or his property is stolen by some person or persons other than the innkeeper or his servants, the innkeeper shall not answer for it (the theft or loss).

" 10th. If a person, upon a special agreement, lodges or occupies a room at an inn, or in the house of another, and is robbed or his property stolen by some person or persons other than the proprietor, or his servants or guests, the innkeeper or proprietor shall not answer for it.

[" Not given for the same reason assigned to the seventh.]

" 12th. An innkeeper is a person who makes it his business to entertain travellers and passengers, and provide lodging and necessaries for them, their horses and attendants.

["Not given.   He need not, in cities or towns where

there are public stables of others provided for such uses, make it his business to provide necessaries for travellers' horses.]

"13th. That if the jury find from the evidence that the restaurant or eating saloon, kept in the basement of the building known as the 'What Cheer House,' was conducted and carried on from October 31st to Nov. 14th, 1865, inclusive, by Charles Quast, Charles Woodward and defendant, jointly and for their joint benefit, profit and advantage, and remainder of the establishment known as the What Cheer House was conducted by defendant alone for his exclusive profit and advantage, *then* no person stopping at said What Cheer House, whether a traveller or a person residing in the city, had a right to demand that he be furnished with meat or drink at such restaurant, and the right so to demand determines whether or not such house is an inn.

[" Not given. Thought not correct as a proposition of law, and if correct, calculated to mislead.]

"14th. If the jury believe from the evidence that plaintiff and his assignors, at the time they respectively delivered to the clerk of the defendant the gold dust and gold coin for which a recovery is sought, knew that defendant did not keep a table for furnishing persons stopping at the What Cheer House with meat and drink, and did not make any charge to plaintiff and his assignors except for lodging by the week, but left the plaintiff and his assignors to furnish themselves with food, meat and drink at any place, eating house, restaurant, or saloon they saw proper, and plaintiff and his assignors, at the time they respectively made the delivery of the gold dust and coin for which a recovery is sought, to the clerk of defendant, were acting with the knowledge that if they ate at any other place than the What Cheer Restaurant no charge would be made against them by defendant, other than for the use of the lodging room and bed occupied by them respectively, and if they should eat at the What Cheer House Restaurant they would be and were required to pay to the keepers of such restau-

rant for such meal, when eaten, and before leaving the restaurant; then it cannot be said that plaintiff or his assignors, so acting with such knowledge, delivered such gold dust and coin to defendant in the character of an innkeeper, nor did defendant receive the same in the character of an innkeeper.

[" Not given, for the same reason as the last.]

" 15th. An inn is a house where the traveller is furnished with everything which he has occasion for whilst on his way. If you believe defendant did not keep such a house at the time the gold dust and coin mentioned in the complaint was delivered to defendant, then plaintiff cannot recover in this action.

" 16th. If the jury believes that defendant was not in fact an inkeeper, *i. e.* a person who makes it his business to entertain travellers and passengers and provide lodgings and necessaries for them, his having held himself out as such (if the jury believe he did so hold himself out) constitutes no basis on which plaintiff can recover in this action.

" 17th. If the jury believe from the evidence that the moneys and gold dust in the complaint mentioned were feloniously taken by force and robbery, and such robbery was committed by a person who was not a servant or employé nor a guest in the What Cheer House, and was without the connivance of defendant, his servants or guests, and without any negligence of defendant, his servants or guests, then the defendant is not liable, and your verdict should be for defendant.

" 18th. If you find that defendant nor his servants were not guilty of any negligence in taking care of the moneys or gold dust mentioned in the complaint, and the same was taken feloniously by a robber, and by force, against the consent and will of defendant and his servants, you should find for defendant.

" In determining the question of negligence you should

consider the following facts and circumstances, if proven by the evidence :

"1. Were the servants employed by defendant, and particularly the watchman and clerk in charge of the What Cheer House, the office, and safe, at the time the same was robbed, (if you believe the same was robbed,) honest, faithful, and competent ?

"2. Was the clerk knocked down by force ? Was the key of the safe in his pocket, and was it taken by force from his pocket ?

"3. Was the room in which the safe was kept in full view of a frequented public street in this city, by glass doors opening in the street ? Was such room well lighted by gas ? Was such public street lighted by gas ? Was money of defendant, or in which defendant was jointly interested, kept in the same safe in which the money and gold dust described in the complaint was kept ? Were the moneys described in the complaint kept in a safe ?

"4. Did defendant keep a clerk and watchman to guard the house and the safe which contained the moneys and gold dust described in the complaint ? Was such clerk on duty at the time the safe was robbed ? Could such clerk have prevented the robbery ?

"19th. If the jury believe from the evidence that at the time plaintiff and his assignors stopped at the What Cheer House, and at the time the money and gold dust in question was stolen, if the same was stolen, that house was kept as a lodging house by defendant, and that defendant did not keep a bar, nor undertake to furnish food, meat and drink, for persons stopping at the house, and the restaurant and eating saloon then conducted in the basement of the building ' What Cheer House ' was conducted and carried on by Quast, Charles Woodward, and defendant jointly, and the custom of defendant was to charge persons who had a room and bed, or a bed, at said lodging house, and receive pay

from such persons nightly or weekly for lodging, without reference to the time the person stayed in the house, and that custom was followed with reference to plaintiff and his assignors, and the custom of the proprietors of the said restaurant or saloon was to charge and collect pay of the persons eating there by the meal, then the defendant was not an innkeeper, and his liability for the custody and care of the moneys and gold dust mentioned in plaintiff's complaint is not governed by the rules applicable to innkeepers, but he was only required to take such care of the moneys and gold dust mentioned in plaintiff's complaint as men in the exercise of ordinary prudence would take of similar money and property belonging to themselves; and if the jury believe defendant and his servants took such care, and the safe was robbed, and the moneys and gold dust in question stolen and robbed without the fault or negligence of defendant or his servants, plaintiff cannot recover.

" 23d.   One taking lodgers to lodge and diet in his house, and letting stables for their horses, is not an innkeeper.

[" Not given.   Not relevant to the case.]

" 24th.   If defendant required payment for lodging nightly, or weekly, he was a lodging house keeper; if plaintiff and his assignors assented to such requirement, and make a special agreement in pursuance thereof.

" 25th.   In a boarding or lodging house, the guest is under an express contract, at a certain rate, for a certain period of time; but in an inn there is no express engagement; the guest, being on his way, is entertained from day to day, according to his business, upon an implied contract.

" 26th. If the jury find plaintiff and his assignors could only stay as long as they respectively paid in advance for lodging, and could only eat one meal at the restaurant without paying, and could not eat a second meal without paying for the first, then the What Cheer House was not an inn.

" 28th. That if the jury believe plaintiff Pinkerton deposited 168 ounces, or any other quantity of gold dust with the
73

defendant, or, what is the same thing, the clerk of defendant at the What Cheer House, the same was not baggage nor money for travelling expenses; and the rules applicable to innkeepers are not applicable to and do not regulate defendant's liability or duty in respect to the keeping and care of such gold dust.

" 29th. That if the jury believe Michael Lynn and Duncan McKinnon, or either of them, deposited 227½ ounces, or any other quantity of gold dust, with defendant or his clerk at the What Cheer House, the same was not baggage nor money for travelling expenses, and the rules applicable to innkeepers are not applicable, and do not regulate defendant's liability or duty in respect to the keeping and care of such gold dust.

" 30th. That the rule of law applicable to such gold dust, whether defendant was or was not an innkeeper, is that defendant was bound to take such reasonable care of the same as men in the exercise of ordinary prudence would take of the same species of property; and if the jury believe that defendant kept the said gold dust in a safe, and took such care thereof as men of common ordinary prudence would have taken thereof, and the same was stolen without the fault or negligence of defendant, or his servants, or guests abiding in his house, but by robbery and force committed by some person or persons coming from without the house, plaintiff cannot recover the value of such dust or any part thereof.

" 31st. That if the jury believe that the plaintiff Pinkerron contributed to the loss of the gold dust, by him alleged to have been deposited with defendant, by his own carelessness or negligence, he cannot recover the value of such gold dust, or any part thereof. That in determining that question, it is proper for the jury to inquire, could the plaintiff have himself deposited said gold dust in a bank, or in the United States Mint, at San Francisco; if he could, was he guilty of negligence in not having done so?

["Not given. First part good—last part bad."]

" 32d. That if the jury believe that Lynn and McKinnon, or either of them, contributed to the loss of the gold dust, by them alleged to have been deposited with defendant, by their negligence or carelessness, or the negligence or carelessness of either of them, plaintiff cannot recover the value of such gold dust, or any part thereof; that in determining that question, it is proper for the jury to inquire, could the said Lynn and McKinnon have deposited said gold dust in a bank, or in the United States Mint at San Francisco; if they could, were they guilty of negligence in not having done so ?

[" Not given, for the same reason as the last.]

" 33d. That, if the jury believe that plaintiff and Lynn and McKinnon were induced to deposit the gold dust which they did deposit with defendant, and Robert Walker was induced to deposit the $1,500 which he deposited with defendant, in consequence of and in pursuance of the printed notices posted in the ' What Cheer House,' copies of which notices are annexed to defendant's answer, and made such deposit under the provisions of said notices, such deposit or deposits created a special contract between plaintiff and defendant, and Lynn and McKinnon and defendant, and Walker and defendant, and the liability of defendant created thereby was to take such care thereof as men in the exercise of common, ordinary prudence would have taken of the same; and if defendant and his servants did take such care thereof, and the same was stolen by robbery and force, which defendant, by the exercise of common, ordinary care could not have prevented, then plaintiff cannot recover the value of such gold dust and coin.

" 34th. That if the jury believe the money alleged to have been deposited by Robert Walker, in the complaint named and claimed to have been ($1,500) fifteen hundred dollars, gold coin, or any part thereof, was not provided by Walker for travelling expenses, plaintiff cannot recover for the part thereof not provided for travelling expenses.

" 36th. That if the jury believe that any portion of the

money alleged to have been deposited by Walker was not provided for use as travelling expenses by him as a traveller, plaintiff cannot recover for such portion, if the jury believe that defendant took such care thereof as men in the exercise of common, ordinary prudence would have taken of the same, and the same was feloniously stolen by robbery and force, which ordinary prudence could not have guarded against, plaintiff is not entitled to recover for such portion.

"37th. Even if the jury should find from the evidence that the What Cheer House mentioned in the complaint was an inn, and was kept by the defendant as such inn at the several times mentioned in the complaint, and that the plaintiff and his assignor, Robert Walker, were each of them a guest at said inn on the first day of November, 1865, and continued to be such guests at said inn to and including the 13th day of November, 1865, still, if the jury also believe from the evidence that the $1,500 gold coin deposited by the said Robert Walker at said What Cheer House, and the 168 ounces of gold dust deposited by the plaintiff at said house, were so deposited by the said plaintiff and the said Walker, respectively, only on the 11th day of November, 1865, and not before that time, and only deposited after several days had elapsed from the time that the said plaintiff and said Walker first became guests at said house, it does not necessarily follow that the defendant is responsible as an innkeeper for the loss of the said $1,500 in gold coin and the said 168 ounces of gold dust. If the jury believe from the evidence that said $1,500 gold coin and said 168 ounces of gold dust were deposited as an ordinary bailment, and that the said defendant and his servants and employés used reasonable and ordinary diligence in taking care of said gold dust and gold coin, and that the same was lost by robbery effected from without the house, and without the connivance or fault of the defendant, or any guest, agent, servant or employé of his, and the jury may find for defend-

ant as to said $1,500 gold coin and said 168 ounces of gold dust aforesaid.

[" Not given.    Thought to be likely to mislead.]

" 38th. Even though the jury may believe from the evidence that the What Cheer House mentioned in the complaint was an inn, and was kept by the defendant as such inn at the several times mentioned in the complaint, and that the plaintiff and his assignors, in the complaint mentioned, were guests, and that each of them was a guest at said inn on the first day of November, 1865, and continued to be such guests until and including the 13th day of November, 1865, and that at the time or times when the said plaintiff and his said assignors, respectively, became guests at said inn, the said plaintiff and his assignors, as such guests, respectively, delivered to and deposited with said defendant the said gold coin and gold dust mentioned in the complaint, and that the said defendant received the same in his capacity as keeper of the inn mentioned in the complant, nevertheless, if the jury believe, from the evidence, that the said defendant did thereupon, at said inn, keep and guard and preserve the said coin and gold dust with the utmost care and diligence during the whole time that the same were on deposit at said inn, and that notwithstanding such care and diligence upon the part of the said defendant and his servants and employés, and without fault upon his or their part, or upon the part of any guest of his at said inn, the said gold coin and gold dust was, on the night of the thirteenth day of November, 1865, feloniously stolen and by force robbed from said inn, and from the custody of the defendant and his guests and servants at said inn, by some person or persons to him and them unknown, who entered said inn from without for that purpose in the night time, and effected said robbery by superior force and violence, overcoming the said agents and servants of the defendant, then the jury should find their verdict for the defendant.

" 39th. Even if the jury believe from the evidence that defendant kept the What Cheer House as an inn, at the

several times when plaintiff and his assignors delivered the packages of gold dust and coin, respectively, to defendant's servants, and if the jury believe that at such time and times the plaintiff and his assignors were guests at such inn, and any portion of the gold dust and coin so delivered was not provided for travelling expenses by such guests, the defendant is not liable as an innkeeper for such portion, but only as a bailee without hire; if the jury believe he did not charge and did not intend to charge any compensation for keeping such gold dust and coin, and if he and his servants took ordinary care of the same, the defendant is not responsible for the loss of the same."

The following instructions were prepared by the Court and delivered to the jury of its own motion, to the giving of which the defendant at the time duly excepted, to wit:

" *Gentlemen of the Jury* : . The plaintiff claims to recover from the defendant the value of 395½ ounces of gold dust and $1,500 in gold coin, alleged to have been placed in defendant's hands as an innkeeper by plaintiff and others, while guests at his inn, a few days previous to the 13th day of November last, and while they were travelling and on their way from the British Possessions on the Pacific Coast to their home in Canada. Plaintiff sues as well for money, etc., claimed by himself, as for that of certain others who have assigned their several demands to him. No question is made about the *bona fides* of the respective assignments. Defendant, among other things, claims that he was not an innkeeper; that the valuables in question were received by him through his employés, not for hire or reward, but as a matter of accommodation to plaintiff and others whose claims he represents; that the same were put into a safe by him for that purpose provided, and carefully guarded; and, while so in his custody and guarded, the said safe, on the night of the 12th of November, was opened by thieves and

the contents stolen, including plaintiff's treasure, without the fault or negligence of himself or his servants.

" An early inquiry by you will be to determine from the proofs whether or not defendant, at the time alleged, was an innkeeper. The Court understands, and so charges you, that an inn, as known to the law, and defined in this class of actions, is a public place of entertainment for all travellers who choose to visit it. It is distinguished from a private lodging or boarding house mainly in this : that the keeper of the latter is at liberty to choose his guests, while the inn-keeper is obliged to entertain and furnish all travellers of good conduct and means of payment, everything which they have occasion for as such travellers, whilst on their way. A house becomes an inn by the mere custom of receiving persons transiently as guests, without a definite agreement as to time. But a mere restaurant or place of eating is not one. It is immaterial, in determining whether one was an innkeeper at any given time, to inquire in what way, as to the particular agencies employed by him to accomplish it, the desired entertainment to the traveller, whether in part or in whole, was furnished. Such agencies or *means* are unimportant. A material fact to determine, in any given case, is whether the alleged innkeeper professed to supply the travelling public at his public house with what travellers have necessary occasion for ; and, if it be found that he did, and, further, that he entertained travellers for hire, it is entirely without importance to know whether the lodging department was conducted by one set of the innkeeper's servants, and the provisions made by him for the traveller's eating are through a *restaurant* in the same building, wherein the innkeeper's actual interest was only that of a partner. Business arrangements of the innkeeper, as to the mode of supply, are neither of the concern of the traveller nor do they in any way affect the legal relations between the inn-keeper and his travelling guests, either as to their reciprocal obligations or liabilities while that relation lasts.

" Should you find that the defendant was, at the time

alleged, an innkeeper within the meaning of that term as defined to you by the Court, and you further find that the plaintiff and his assignors were travellers and guests of defendant as such innkeeper, and that plaintiff and his assignors, while at defendant's inn as such travellers and guests, placed in charge of defendant, through his servants and employés by him thereto authorized, money or other valuables for safe keeping during their temporary sojourn, as alleged in complaint, and the same, while so left in his charge, were lost by theft or robbery, and through no fault or negligence of plaintiff, his assignors, or the act of God, or that of the public enemy, then, and in such case, the defendant, as an innkeeper, is held to extraordinary liability therefor, on grounds of public utility growing out of his vocation. In such case he is holden to warrant the safe keeping of the property of his travelling guests; his liability is that of an insurer, and as such insurer of the property delivered to him, he is liable for loss or damage happening to it while in his possession, except when such loss or damage is occasioned by the act of God, or the public enemy, or through the fault of the owner.

. " The principle of public utility which underlies this most salutary rule of the law, touching an innkeeper's liability to his travelling guests, is supported by manifest reason. It has been early and often expressed by distinguished jurists, and, it is thought, has commended itself at all times to the just and enlightened, on all occasions where expressed.

" ' If he be not held to this strict rule of accountability, it would be in his power to combine with robbers, or to pretend a robbery, or some other accident, without the possibility of remedy to the party injured, inasmuch as the combination could be effected in such a clandestine manner as would render discovery practically impossible; ' and it is added, ' the law will not expose him to so great a temptation.' Again, it has been forcibly said, ' that in case goods should be lost or injured by the grossest negligence of the innkeeper or his servants, or stolen by them, or by thieves in collusion

with them, the owner would be unable to prove either of these causes of loss.'

"These considerations are the basis of the law which obtains in the best adjudged cases as to the liability of innkeepers; they are confessedly those on which the liability of common carriers rests; and if salutary as to common carriers, they are equally so as to innkeepers. 'Carriers and innkeepers are under legal obligations—the former to accept property offered for transportation, the latter such travelling guests as present themselves, with their goods; and they are entitled to demand a reasonable compensation, and they have a lien on the property therefor. The carrier may demand recompense commensurate with his extraordinary liability; so, too, may the innkeeper. Indeed, they stand alike in all substantial points of duty, obligations and rights, as well public as private.' Unless we are at liberty to make a distinction in favor of innkeepers which clearly impugns a principle conceded by all to properly apply to common carriers, innkeepers cannot be relieved from the rule which holds them liable as insurers, with the exceptions previously stated, against loss and damage to the goods of their travelling guests, occurring when in their possession.

"We further charge you, that if you believe, from the evidence, that the defendant, at the time alleged in the complaint, was the keeper of an inn, and as such, and as a part of his business as an innkeeper, had been and was in the habit of receiving moneys, gold dust, or other valuable packages from his guests for safe keeping, and for such guests' accommodation, and kept a book for the registry thereof, and that plaintiff and his assignors, as travelling guests of defendant, delivered at the inn, to the clerk of defendant having charge of such valuables and registry, money and gold dust, or either of them, for safe keeping, and the same has been lost while so in the custody of defendant, which loss was not caused by the act of God nor by that of the public enemy, nor by that of plaintiff or his

74

assignors, then defendant, as such innkeeper, is liable for the actual value of what was so lost.

" Should you find that the defendant was not an innkeeper at the time charged, and that he received plaintiff's and his assignors' coin and dust for safe keeping, without reward received or to be received therefor, then and in such case defendant was only bound to use such care in the safe keeping thereof as a prudent man, under similar circumstances, is reasonably expected to employ in the preservation of his own property.

" Should you find that defendant was not an innkeeper, and that the alleged valuables were left with him, not for reward, and that the same were lost through no fault or negligence of himself or servants, then defendant is not liable.

" Should you find for plaintiff, then, in estimating the value of the gold dust alleged to have been lost, you are not at liberty in your calculations to recognize any mercantile difference in value between gold and silver, as distinguished from United States legal tender notes, since, in law, the dollar of the one is the equivalent of the dollar of the other."

A verdict and judgment were rendered and entered for the plaintiff for ten thousand seven hundred and eighty-eight dollars. By the terms of the judgment the sum of fifteen hundred dollars, being a portion of said judgment, was made payable in gold coin only.

The defendant moved for a new trial upon the grounds, among many others, that the verdict was against the evidence, and that the verdict and evidence were against law; that the Court erred in giving to the jury the instructions that were given, and erred in refusing to give to the jury the instructions asked for by the defendant.

The motion was denied, and from the order denying the same, and from the judgment, the defendant appealed.

*Patterson, Wallace & Stow,* for Appellant.

The issues raised by the pleadings were:

First—Was defendant an innkeeper?

Second—Was plaintiff or either of his assignors a guest at an inn kept by defendant at the time of the deposit and loss?

Third—Did defendant receive said gold dust and coin in the character of innkeeper, or as a bailee without hire?

Fourth—Was the same lost by a forcible robbery, without fault, carelessness, or connivance of defendant, his servants or guests?

Fifth—If defendant is liable at all, is he liable for the whole value of said property ($10,787 20-100)?

I. The defendant insists that the " What Cheer House," kept by him, was not, in November, 1865, at the time plaintiff and his assignors put up there, an inn in the common law definition of the term, and hence the liability of an innkeeper with reference to said property did not attach to him.

" An innkeeper is one who holds himself out to the public as engaged in the business of keeping a house for the *lodging and entertainment* of travellers and passengers, *their horses and attendants,* for *reasonable compensation.*" (*Howth* v. *Franklin,* 20 Texas, 801; *Thompson* v. *Lacy,* 3 Barnwell & Alderson, 283.) Story on Bailments, Sec. 475, uses the same language, citing Bacon's Abridgement, Inns and Innkeepers.

But the keeper of a mere coffee house is not deemed an innkeeper. (Story on B., Sec. 476, citing *Doe* v. *Lanning,* 4 Camp. 77.) A lodging house keeper is not an innkeeper. (Story on B., Sec. 476; Bell's Com. 469.) " One taking lodgers to lodge and diet in his house, and letting stables for their horses, is not an innkeeper. (*Parkhurst* v. *Foster,* 1 Salkeld, 388; *Carpenter* v. *Taylor,* 1 Hilton, N. Y., 193; 3 E. D. Smith, 149; Jacob's Law Dic. 452; 12 Mod. 255; *Carter* v. *Hobbs,* 12 Cooley, Mich., 54.) Assuming the cases of *Carpenter* v. *Taylor,* 3 E. D. Smith, 149, and 12 Mod. 255, to be law, defendant requested the Court to give the

jury the seventh, eighth, ninth and tenth instructions, which were refused.

What lien, we ask, had defendant solely upon plaintiff's baggage or valuables for the food consumed at the restaurant, and what lien had the proprietors of the latter for lodging plaintiffs? "It has always been conceded that upon all the goods for whose safe keeping he is liable, an innkeeper has a lien for the keeping of his guest." (*Grinnell* v. *Cook*, 3 Hill, 485.)

In *Kisten* v. *Hildebrand*, 9 B. Monroe, 75, it was said: "And certainly a man professing to be the keeper of a boarding house, or a licensed coffee house, is not, though he also entertain travellers, liable to his boarders as an innkeeper is liable to his travelling guests. * * The Court should have submitted to the jury whether plaintiff was a mere boarder," etc. If Mr. Chief Justice Marshall, in the last case, correctly expounded the difference between an innkeeper and a boarding or lodging house keeper, the Court below should have submitted to the jury the twelfth, thirteenth, fourteenth, fifteenth, and sixteenth instructions requested by defendant.

II. Was plaintiff (and his assignors, respectively,) a guest at an inn kept by defendant at the time of the deposit and loss?

An innkeeper cannot make any terms or conditions with his guest. (6 Term R. 17; *Cole* v. *Goodwin*, 10 Wend. 269.) The guest must be a traveller. (1 Roll. Abr. 394; 2 Broome, 254; *Rex* v. *Luellin*, 12 Mod. 445; *Ingoldsbee* v. *Wood*, 36 Barb. 451; Bacon's Ab., Inns, C, 5; *Parkhurst* v. *Foster*, 1 Salkeld, 383–388.)

One entertained on a *special contract* to sojourn for a time is not a guest of the inn, but a boarder. (Story on B., Sec. 477.) Plaintiff lodged and occupied rooms in the "What Cheer House" under a special contract, i. e. at two dollars per week, without any obligation, express or implied, to eat in the "What Cheer Restaurant," or to pay aught but the two dollars. If he elected to eat at the restaurant, the

instant he called for a dish enumerated on the bill of fare he entered into the following special contract: The proprietors of the restaurant undertook to furnish any such dish at the price fixed thereon, and the plaintiff agreed to pay per terms of the bill. Nothing can be plainer than that plaintiff was not entertained as a traveller guest from day to day upon an implied contract, and furnished with everything he had occasion for on the way. Pay, or the right to charge, is the criterion of the innkeeper's liability. (26 Ver. 384.) Could defendant have been indicted, as at common law, for not furnishing plaintiff with meat and drink for himself and horse? If not, he was not an innkeeper. We submit, the Court should have given to the jury the nineteenth, twenty-fourth, twenty-fifth, and twenty-sixth instructions, as correct legal rules which the jury should take into consideration in determining the question presented by the twenty-seventh instruction, and by the first, second, third, and fourth instructions given at the request of plaintiff.

III. Did defendant receive such coin and gold dust as a bailee without hire, or in the character of innkeeper? Plaintiff arrived at the house November 1st; he did not deposit his one hundred and sixty-eight ounces of gold dust until November 11th, in defendant's safe.

Defendant could be a bailee without hire, independent of the character of an innkeeper. (*Burgess* v. *Clements*, 4 Maule & Selwyn, 306; *Howth* v. *Franklin*, 20 Texas, 801.) Had plaintiff regarded defendant as an innkeeper, he would have made such deposit on arriving at the house; whereas, he only made the deposit in defendant's safe after having become acquainted with the manner defendant received and kept deposits, the mode in which the house was conducted, etc., and evidently because he considered it a safe place of deposit. There was no necessity for making the deposit with defendant; it was made in pursuance of the card posted about the house. (See *Meeker* v. *Brown*, 1 Cal. 230, and cases there cited.)

The thirty-seventh instruction, refused, should have been submitted to the jury.

IV. Was the money, etc., lost by a forcible robbery, without fault, carelessness, negligence, or connivance of defendants, his servants or guests? Testimony was given tending to prove that the property, etc., was in a Tilton & McFarland safe, which was locked, the key in the pocket of the clerk, the house guarded by a night watchman, a gaslight burning within three or four feet of the safe, two other lights within fifteen feet, the whole room visible from Sacramento street, a public thoroughfare much frequented at all hours of night; two men entering, knocked the clerk down, rendering him insensible, rifled his pockets of the keys, opened the safe, and carried off its contents, amounting to thirty thousand dollars and upwards. Jones on Bailments, after laying down the liability of innkeepers, concludes (p. 111): "In all cases, however, it is competent for the innholder to repel the *presumption* of his knavery or default by proving that he took *ordinary* care, or that the *force* which occasioned the loss or damage was truly irresistible." (See Story on Bailments, Sec. 472; *Bennett* v. *Miller,* 5 Term R. 276; *Hill* v. *Owen,* 5 Blackford, 323; Jones on Bailments, 96.) Thus, although a *common* carrier is liable for all losses occasioned by an armed mob, (not being public enemies,) an innkeeper is not (as it should seem) liable for such a loss. (*Morse* v. *Slue,* 1 Vent. 190, 238; Hob., Case 30; *Rice* v. *Kneeland,* Cro. Jac. 320; 12 Mod. 480.)

Neither is he liable, as it should seem, for a loss by robbery and burglary by persons from without the inn. (*Burgess* v. *Clements,* 4 Maule & Selwyn, 306; *Calye's Case,* 8 Co. 32; 2 Kent's Com., Secs. 40, 593, 3; *Dawson* v. *Chamey,* 48 Eng. Com. L. 165; *Metcalf* v. *Hess,* 14 Ill. 131; *Hill* v. *Owen,* 5 Blackford, 323; *Merritt* v. *Claghorn,* 14 Law Reporter, 558; 23 Vt. 177.)

The plaintiff contended that defendant, being an innkeeper, was an insurer of the goods of his guest. Mr. Justice Redfield, in an able review of the authorities, ancient

and modern, held defendant not liable, and demonstrated that such was the English rule.

In *Chamberlain* v. *Masterson*, 26 Ala., Mr. Justice Goldthwaite: "The law held the innkeeper responsible to travellers who became his guests for all losses *infra hospitium* in every case, unless he proves that it was not owing to any default in him or his servants." (*Calye's Case*, 8 Coke, 32.)

In *Kisten* v. *Hildebrand*, 9 B. Monroe, 74: "But he is not liable if the loss be occasioned by external force or robbery" "where property committed to the custody of an innkeeper by his guest is lost, the presumption is that the innkeeper is liable for it, but he can relieve himself from that liability by showing that he has used *extreme diligence*." (*Howth* v. *Franklin*, 20 Texas, 798.)

Mr. Justice Redfield, in *McDaniels* v. *Robinson*, 26 Vt. 336, is of the same opinion.

In *Laird* v. *Eichold*, 10 Indiana: "The cases of *Dawson* v. *Chamey*, 48 Eng. Com. Law, 164; 9 B. Monroe, 72; 14 Illinois, 129; 26 Vt. 316, were held to establish the doctrine that an innkeeper is only *prima facie* liable for loss, and that he may exculpate himself by proof that the loss did not happen through any neglect or fault on his part, or that of his servants, for whom he is responsible.

V. If defendant be held liable at all, he is not liable for the whole value of the property.

The question is important, not only to defendant, on account of the large amount involved, but to the travelling public, for the necessary result must be, if respondent's theory be adopted, that the business of hotel keeping must be abandoned by men of pecuniary responsibility, to be conducted solely by bankrupts, swindlers and vagabonds.

The plaintiff evidently had not provided the dust for travelling expenses.

*Wilkins* v. *Earle*, Superior Court of New York, American Law Register, October, 1865, is an able review of the authorities. Confined the guests' recovery to an amount equal to reasonable travelling expenses. (*Bendetson* v. *French*, 46

Barbour.)   We extract a few of the cases where, and show-
ing the property for which, the landlord is not liable, not
coming within the term baggage, and not within money pro-
vided for ordinary travelling expenses.   *Giles* v. *Fauntleroy*,
13 Wend.: Not liable for Colt's pistols and silver teaspoons;
(do. 11th Md. 449, 450.)   *Taylor* v. *Mermot*, 4 Duer, 116:
Only for money intended to defray the necessary personal
expenses of the traveller, $353 54.   (*Orange Co. Bank* v.
*Brown*, 9 Wend. 119.)   *Wiles* v. *Cottle*, 19 English Com. Law,
219: £15 was provided for travelling expenses.   £50 was
being carried by the traveller to deliver to another; the
recovery limited to £15.   The last two cases are cited upon
the proposition that if the Court shall determine the inn-
keeper's liability is that of a common carrier, the same rule
must be applied to each.   *Hawkins* v. *Hoffman*, 6 Hill, 589:
Not liable for merchandise or samples thereof.   *Pardee* v.
*Drew*, 15 Wend. 457: Or boxes of jewelry for sale.   (4 E.
D. Smith, 49; 2 Bosworth, 587; 4 Bosworth, 225.   *   *   *)
The twenty-eighth, twenty-ninth, thirtieth, thirty-fourth, and
thirty-sixth instructions should have been submitted to the
jury.

VI. The Court erred in rendering judgment that one
thousand five hundred dollars of the recovery be paid in
coin.   The verdict said nothing about coin.   The action was
not on contract, but case.   (See 2 Chitty's Pleadings, 667,
668, and Notes.)   Hence, the Specific Contract Act has no
application, and the measure of defendant's liability was
lawful money.

VII. The verdict was excessive.

| | |
|---|---:|
| Pinkerton had 168 ounces dust, valued by Hickox @ $24 (the highest)................................................... | $4,032 |
| Lynn and McKinnon brought from Cariboo 227½ ounces, from which they took 14 ounces; balance, 213½ ounces...... ......................................... | 5,124 |
| And Walker had coin.. ........ ......... .................... | 1,500 |
| | $10,656 |

This, deducted from the verdict, shows that the verdict was excessive for one hundred and thirty-one dollars and twenty cents.

The jury had no right to add interest, (*Lakeman* v. *Grinnell*, 5 Bosw. 625,) not even from the time of the commencement of the suit. (*Richmond* v. *Bronson*, 5 Denio, 55.)

*S. M. Wilson*, and *A. P. Crittenden*, for Respondent.

An inn has been judicially defined as "a house where the traveller is furnished with everything which he has occasion for whilst upon his way." (1 Parsons on Con. 623; *Thompson* v. *Lacy*, 3 Barn. & Ald. 283–86; Story on Bail. 501, Sec. 475; 2 Kent's Com., Sec. 40, p. 595.) There may be a distinction between the liability of the keeper of an inn and of a mere boarding house, where none are received but for a certain time and on certain terms; but the house of the defendant clearly was not of the latter class. (*Wintermute* v. *Clarke*, 5 Sandf., S. C., 247; *Taylor* v. *Monnot*, 4 Duer, 117.) As to who are the guests of an innkeeper, see 1 Parsons on Con. 627. The length of time a man is at the inn makes no difference. (Story on Bail. Sec. 477; *The Berkshire Woolen Co.* v. *Proctor*, 7 Cush. 417.)

Were the plaintiff and his assignors guests at defendant's inn? Under the circumstances of this case the authorities before referred to fully demonstrate the truth of the affirmative. A number of authorities are cited by appellant to show that the guest must be a traveller. If the plaintiff and his friends were not travellers in the strictest sense of the term, travellers are rarely to be found. But it is said that terms and conditions were imposed by the defendant, and that an innkeeper cannot make any terms or conditions with his guests. If this be true, then the terms and conditions are simply void, and his common law duty to his guests remains with all his common law liability. But there was no special contract between plaintiff and his assignors and

75

defendant. A payment in advance or by the week does not amount to a special contract. (See 7 Cush. 417; 1 Parsons on Con. 627–8.)

Did the defendant receive the coin and gold dust as a bailee without hire, or in the character of innkeeper? The defendant's counsel on this point maintains that it was not as innkeeper, on the single proposition that Pinkerton and Walker each arrived and put up at the "What Cheer House" on the 1st of November, but did not bring their coin and dust until the 11th of November. Because of this, it is urged that the treasure was not received as innkeeper. What were these travellers, under the circumstances, to do with their property? They were travelling with it; it was the very object of their journey. They took it to their inn, and there was the notice. (Exhibit A, annexed to the answer.) 4 E. D. Smith, 94, is directly applicable here, and not less so Ib. 55 et seq.

A new trial will not be granted merely because the Court refused to give instructions which might have been properly given. (Breckenridge v. Anderson, 3 J. J. Mar. 717; Thomas et ux. v. Tanner, 6 Mon. 61; 3 Gra. & Wat., N. T., 717.) Where justice has been done, a new trial will not be granted. (See the numerous cases cited in 3 Gra. & Wat., N. T., 862 et seq; also, Merle v. Matthews, 26 Cal. 467, and cases cited.) These views, we submit, are conclusive, not only as to the thirty-seventh instruction, but also as to the other instructions refused.

Was the money, etc., lost by a forcible robbery, without fault, carelessness, negligence, or connivance of defendant, his servants or guests? Under this head the appellant's counsel contends that the liability of an innkeeper depends upon the degree of care which he uses, and that if he has exercised *ordinary* care and diligence he is not liable.

But we contend that the true rule is that the innkeeper is an insurer against everything but the act of God or the public enemy, or the neglect or fraud of the owner of the property. The weight of authorities support it. (*Shaw* v. *Berry*,

31 Maine, 478, with an able review of the cases; *Richmond* v. *Smith*, 8 Barn. & Cress. 10; 2 Stephen's Com. 133; 1 Chitty Black. 430, note; *Sibbly* v. *Aldrich*, 33 N. Hamp. 553, with a full review of the authorities; *Mateer* v. *Brown*, 1 Cal. 228–9; *Manning* v. *Wells*, 9 Humph. 764; *Thickstone* v. *Howard*, 8 Blackf. 535; 2 Kent's Com. 547; *Mason* v. *Thompson*, 9 Pick. 283; *Berkshire Woolen Mills* v. *Proctor*, 7 Cush. 427; Edwards on Bailments, 408; *Burgess* v. *Kent*, 4 Mau. & S. 306; 2 Dane's Abr. 51; *Bedell* v. *Morris*, Yelverton, 162, note by Metcalf; *Tammutt* v. *Packard*, 1 Starkie, 249; *Amistead* v. *White*, 6 Law & E. 349; *Grinnell* v. *Cook*, 3 Hill, 488; *Purvis* v. *Coleman*, 21 N. Y. 112 *et seq*; *Piper* v. *Manny*, 21 Wend. 284; *Clute* v. *Wiggins*, 15 Johns. 175; *Washburne* v. *Jones*, 14 Barb. 195; *McDonald* v. *Edgerton*, 5 Barb. 564; *Gile* v. *Libby*, 36 Barb. 74; *Ingolsbee* v. *Wood*, 36 Barb. 455; *Hawley* v. *Smith*, 25 Wend. 642; *Van Wyck* v. *Howard*, 14 How. Pr. 151; *Hulett* v. *Swift*, 42 Barb. 249; *Wells* v. *Steam Navigation Co.*, 2 N. Y. 204.)

The Acts of the Legislature of New York, of 1855, were held not to change or affect the common law liability. (*Gile* v. *Libby et al.*, 36 Barb. 70.) The new Civil Code, by David Dudley Field, Esq., and Judge Bradford, recommends this strict liability as a part of the new code. (Civ. Code, N. Y., 289.) In 1 Parsons on Con. 623, it is said: "Public policy imposes upon an innkeeper a severe liability. The later, and, on the whole, the prevailing authorities make him an insurer of the property committed to his care against everything but the act of God or the public enemy, or the neglect or fraud of the owner of the property. He would then be liable for a loss occasioned by his own servants, or by other guests, by robbery, or burglarly from without the house, or by rioters or mobs." (See *Hulett* v. *Swift*, 33 N. Y., 6 Teffany, 572.)

V. Is the defendant liable for the whole value of the property lost?

It is contended by appellant's counsel that a guest can only recover of the innkeeper for a necessary amount of

baggage and a reasonable amount of money for his travelling expenses.

But, as establishing the point conclusively against appellant, we cite: *Cayle's Case*, 8 Co. 32; 1 Smith's L. C. 172; *Richmond* v. *Smith*, 8 Bar. & Cress. 9; *Hulett* v. *Swift*, 42 Barb. 230, Sec. 33, N. Y. 572; *Bennett* v. *Mellor*, 5 Durnf. & E. 273; *Clute* v. *Wiggins*, 14 John. 175; *Piper* v. *Manny*, 21 Wend. 282; *Shaw* v. *Berry*, 31 Maine, 478; *Sibbly* v. *Aldrich*, 33 N. Hamp. 553; *Sneider* v. *Geiss*, 1 Yates, 34; *Kent* v. *Shuckard*, 2 Barn. & Adol. 803; *Epps* v. *Hinds*, 27 Miss. 663; *Tomson* v. *Havre de Grace Bank*, 6 Har. & John. 47. (See, also, Anthon's Law Student, 55; 2 Stephens' Com. 133; *Mateer* v. *Brown*, 1 Cal. 221; 7 Cush. 426–7; *Purvis* v. *Coleman et al.*, 21 N. Y. 112.)

By the Court, RHODES, J.:

The definition of an inn, given by Mr. Justice Bayley, in *Thompson* v. *Lacy*, 3 B. and Ald. 286, as "a house where a traveller is furnished with everything which he has occasion for while on his way," is comprehensive enough to include every description of an inn; but a house that does not fill the full measure of this definition may be an inn. It probably would not now be regarded as essential to an inn that wine or spirituous or malt liquors should be provided for the guests. At an inn of the greatest completeness entertainment is furnished for the traveller's horse as well as for the traveller, but it has long since been held that this was not essential to give character to the house as an inn. (See *Thompson* v. *Lacy, supra;* 2 Kent, 595; 1 Smith Lead. Cases, notes to *Coggs* v. *Bernard;* Sto. on Bail. Sec. 475; *Kisten* v. *Hildebrand*, 9 B. Mon. 74.) In *Wintermute* v. *Clarke*, 5 Sandf. 247, an inn is defined as a public house of entertainment for all who choose to visit it. The defendant insists that the "What Cheer House" was a lodging house and not an inn; because, as he says, the eating department was dis-

tinct from the lodging department. It appears that in the basement of the "What Cheer House," and connected with it by a stairway, there was a restaurant, which was conducted by the defendant and two other persons jointly, and that the three shared the profits. Where a person, by the means usually employed in that business, holds himself out to the world as an innkeeper, and in that capacity, is accustomed to receive travellers as his guests, and solicits a continuance of their patronage, and a traveller relying on such representations goes to the house to receive such entertainment as he has occasion for, the relation of innkeeper and guest is created, and the innkeeper cannot be heard to say that his professions were false, and that he was not in fact an innkeeper. The rules regulating the respective rights, duties and responsibilities of innkeeper and guest have their origin in considerations of public policy, and were designed mainly for the protection and security of travellers and their property. They would afford the traveller but poor security if, before venturing to intrust his property to one who by his agents, cards, bills, advertisements, sign, and all the means by which publicity and notoriety can be given to his business, represents himself as an innkeeper, he is required to inquire of the employés as to their interest in the establishment, or take notice of the agencies or means by which the several departments are conducted. The same considerations of public policy that dictated those rules demand that the innkeeper should be held to the responsibilities which, by his representations, he induced his guest to believe he would assume. We think the jury were fully warranted by the evidence in finding that the "What Cheer House" was an inn, and that the defendant was an innkeeper; and the Court correctly instructed the jury in respect to those facts.

II. Very little need be said upon the question whether the plaintiff and his assignors were guests at the defendant's inn. A traveller who enters an inn as a guest does not cease to be a guest by proposing to remain a given number of days, or by ascertaining the price that will be charged for

his entertainment, or by paying in advance for a part or the whole of the entertainment, or paying for what he has occasion for, as his wants are supplied. We see no reason why the innkeeper may not require payment in advance or why the guest may not pay in advance for lodgings for a part or all the time he intends to remain as a guest at the inn. There can be no doubt from the evidence that the plaintiff and his assignors went to the "What Cheer House" as travellers and intended to have left for New York on the day the robbery was committed.

III. Did the defendant receive the coin and gold dust as a bailee without hire, or in the character of innkeeper? In *Mateer* v. *Brown*, 1 Cal. 221, it is held that that was a question of fact, and the question was directed to be submitted to the jury. It was shown, beyond all controversy, that the gold dust was taken to the inn several days after the plaintiff arrived there as a guest. If that circumstance would have relieved the defendant of responsibility as an innkeeper, the question would not have been directed to be submitted to the jury, for it would be useless to find that he received it as innkeeper unless he could be held responsible in that capacity. That case is authority that the innkeeper may be held responsible for the property of the guest, placed under his care, after the owner of the property has become a guest at the inn. Two of the guests, in this case, deposited their gold dust with the defendant on their arrival at the hotel, and the others—the plaintiff and Walker —made their deposits after they had been at the hotel ten days. No reason is perceived why the responsibility of the innkeeper, for the safe keeping of his guests' property should be limited to such property as the guest may have in his immediate possession at the moment of his arrival at the inn. The relation of innkeeper and guest, out of which springs the responsibility, is the same, whether the guest's baggage is conveyed to the inn with him, or at a subsequent time; or whether he then has in his possession or afterwards

procures the money, clothing, etc., that he may need on his journey.

The guests of the house were requested not to leave money or articles of value in their rooms, but to deposit the same for safe keeping in a safe at the office, and there is nothing in the case to show that the deposits were made by the guests or received by the innkeeper for any other reason or purpose than in pursuance of such request, and the better to enable the innkeeper to give that care and security to the property which are required of him by law. In *Needles* v. *Howard*, 1 E. D. Smith, 55, and *Stanton* v. *Leland*, 4 E. D. Smith, 94, the material questions arising upon this point were very fully considered and the conclusion reached was adverse to the position of the defendant. The instruction requested by the defendant on this point was liable to the objection stated by the Court as the ground of its refusal, that it was likely to mislead the jury. The kind of bailment denominated in the instruction "ordinary bailment," is not defined or in any way distinguished from that bailment which arises when a guest places his property in the custody of an innkeeper in the customary mode.

IV. The fourth point as stated by the defendant is, "Was the money, etc., lost by a forcible robbery, without fault, carelessness, negligence, or connivance of defendant, his servants or guests?" We think the jury were justified in answering the question in the negative, because of the neglect of the defendant's clerk to turn on the safe the combination lock. But under this point counsel have discussed the question whether an innkeeper is an insurer of the property of his guest, committed to his care. The authorities do not agree upon this question. Some of the cases hold that the innkeeper is not responsible when the loss was occasioned by inevitable casualty, by irresistible force, by superior force, or by robbery or burglary, committed by persons from without the inn; and some go even further and hold that the presumption of negligence may be rebutted, by showing that there was no negligence in point of fact on his

part, or that of his servants. But the preponderating weight of authority, from the time of the decision in *Calye'e Case*, 8 Coke, 32, to the present time, is in favor of the rule that he is liable as an insurer. The rule is thus stated in 1 Pars. on Cont. 623 : " Public policy imposes upon an innkeeper a severe liability. The later, and on the whole, prevailing, authorities make him an insurer of the property committed to his care, against everything but the act of God, or the ·public enemy, or the neglect or fraud of the· owner of the property. He would then be liable for a loss occasioned by his own servants, by other guests, by robbery or burglary from without the house, or by rioters or mobs." The rule is carried to the same extent in *Mateer* v. *Brown*, 1 Cal. 221. We deem it unnecessary at this time to enter upon a review of the cases, or to recapitulate the argument or reasons in support of the rule, as this has very fully been done in *Shaw* v. *Berry*, 31 Maine, 478 ; *Sibley* v. *Aldrich*, 33 N. H. 553 ; *Hulet* v. *Swift*, 42 Barb. 249, S. C. ; and 33 N. Y. 571. (See, also, *Grinnell* v. *Cook*, 3 Hill, 485 ; *Thickstone* v. *Howard*, 8 Blackf. 535 ; *Piper* v. *Manny*, 21 Wend. 282 ; *Mason* v. *Thompson*, 9 Pick. 280.)

V. The fifth point is that the defendant is not liable for an amount beyond what is sufficient for the reasonable travelling expenses of the plaintiff and his assignors. The gold dust was not money, any more than are bank bills, or Government stocks or securities ; but it was so readily convertible into money at San Francisco that for the purposes of this question it may be treated as money. The doctrine of *Mateer* v. *Brown* is opposed to the limited liability contended for. It would be altogether impracticable for the Court to lay down any rules for determining what would be reasonable travelling expenses. One person might choose to make the trip in the cheapest manner, and another might indulge in the most lavish expenditures. The contingencies to which the party might be subject on his journey could not be anticipated, nor the expenses. calculated with any certainty. But if the innkeeper is authorized in any case to

supervise the expenditures of his guest there was nothing of that character manifested here. The notice to the guests was that the innkeeper would not hold himself responsible for their money or articles of value unless they were deposited in the safe at the office. There was no limit indicated as to the amount or value that might be deposited; and it appears that at the time the safe was robbed it contained money and gold dust, deposited by guests, of about the amount of thirty thousand dollars. These deposits were being made every day, and entries thereof were made in a book kept for that purpose. The evidence shows that the receipt and entry of such deposits was a part of the regular and usual business of the hotel. The plan was devised and carried on, not only for the innkeeper's protection, but to induce travellers to patronize the hotel, by offering them greater security for their property. After having thus offered, as an innkeeper, to take charge of the money of his guests, and having received it on deposit and placed it where such property was usually kept, he cannot avoid responsibility for its loss, by saying that the guest deposited too much money. It is too late to raise the objection that the amount of money was larger than the guest might need for his reasonable expenses after the money deposited according to the rules of the inn has been stolen, even admitting that the objection would be good before the deposit was made.

Several of the cases cited by the defendant support the position that the innkeeper is not responsible for everything that the guest may choose to bring to the inn; but we apprehend that he would not have been relieved of responsibility in any of those cases had the property at his request been committed to his special care and custody. In *Calye's Case* it was resolved that " if one brings a bag or chest, etc., of evidences into the inn, or obligations, deeds, or other specialities, and by default of the innkeeper they are taken away, the innkeeper shall answer for them." The language of Mr. Chancellor Kent is equally strong: " The responsi-

76

bility of the innkeeper extends to all his servants and domestics, and to all the movable goods and chattels and moneys of his guest which are placed within the inn." (2 Kent, 593.) There are many cases in which it is held that his responsibility extends to money and chattels other than such as are provided by the guest for his necessary or convenient use while travelling. In *Clute* v. *Wiggins,* 14 Johns. 175, the guest recovered for certain bags of wheat and barley. In *Piper* v. *Manny,* 21 Wend. 282, the recovery was for a tub of butter. In *Snider* v. *Geiss,* 1 Yeates, 34, the innkeeper was held liable for two hundred and thirty Spanish milled dollars. In *Hulett* v. *Swift,* 33 N. Y. 571, the plaintiff recovered the value of his horses, wagon and a load of buckskin goods. In *Townson* v. *Havre de Grace Bank,* 6 Har. & John. 47, the property in controversy was one thousand dollars, in bank bills. In *Mateer* v. *Brown,* the amount deposited was five thousand five hundred dollars, in gold dust. The doctrine laid down in *Purvis* v. *Coleman,* 21 N. Y. 112, applies with very decided force to the question here. A sum of money, four hundred sovereigns, was stolen from the plaintiff's trunk, which was in a room in the hotel, assigned to the plaintiff. Notice, in fact, had been given to the plaintiff, on his arrival, that the defendants had provided a safe for the deposit of the valuables of their guests, and that they would not be liable for their loss, unless they were deposited in the safe. The Court declared that " at common law the defendants were liable for all losses of the property of their guests *infra hospitium,*" excepting, of course, those occasioned by the act of God or the public enemy, or the neglect or fraud of the guest; but that the Legislature had modified this strict liability at common law, by enacting that if the proprietor of a hotel should furnish a safe at the office of the hotel for the safe keeping of the money and other valuables of his guests, and should notify them thereof by posting notices in the rooms occupied by his guests, he should not be liable for any loss of money or valuables, etc., if the guests should neglect to deposit the same in such safe.

The Court affirmed the judgment for the defendants on two grounds.   1st, that the actual notice was sufficient under the statute without proof of the constructive notices, by posting the notice in the room of the guest; and 2d, that the guest having received the notice in fact, and failing to comply with it, was guilty of negligence, and must bear the loss. A majority of the Court concurred on the first ground, and the whole Court concurred on the second ground.   One purpose of the Act, it was held, was to enable the host to relieve himself of his common law liability—that is, of liability for the loss of the money or the valuables of the guest who neglected compliance with the notice.   That was the main object of the Act, although it was at the same time intended to provide for the security of the guest.   That was precisely the purpose of the notice in this case, which was given to the guests by posting the rules of the house in the rooms occupied by them.   The statute of New York was, in truth, only declaratory of the law in such cases, except only in respect to constructive notice, which is made equivalent to actual notice.   In passing upon the second ground, it was held that, when the notice in fact was given, independently of the statute, the innkeeper would not be responsible for the loss when the guest neglected to comply with the requirements of the notice.   It necessarily follows that he would have been responsible for the loss had the guest made the deposit in compliance with the notice.   The statute, then, conferred upon him no right or privilege but that of imparting notice by posting the same in the manner therein prescribed, and neither added to nor diminished the responsibility that he would have incurred had he received the money on deposit, in pursuance of a notice in fact, and in the course of the usual and customary business of the hotel. Nothing is said in that case as to their being an excess of money beyond what was needed for travelling expenses and personal use, but if there is anything in the point it was obvious, from the amount of money involved.

The authorities cited by the defendant throw some light

on the question. Thus in *Orange County Bank* v. *Brown*, 9 Wend. 85, the plaintiff sought to recover from a common carrier for the loss of eleven thousand dollars, which the plaintiff's agent was conveying in his trunk. He stated to the officers of the boat that the trunk was valuable, but not that it containd money. He placed the trunk in the office, as he was directed by the clerk, and it was stolen from that place. Mr. Justice Nelson, in delivering the opinion of the Court, said : "Now upon the ground that the defendants in this case have received no compensation or reward from the plaintiffs or any other person for the transportation or risk of the money, and that they were deprived of such reward by the unfair dealing of the agent of the plaintiffs with the defendants, I am of opinion that the plaintiffs cannot recover, and that they were properly nonsuited on the trial." *Miles* v. *Cattle*, 19 Com. L. R., 333, cited in that case, was decided on the same ground—that the defendant was entitled to compensation for the transportation and risk of the money, but it was carried among the baggage of the passengers without informing the defendants. The same principle was applied in *Pardee* v. *Drew*, 25 Wend. 459, when the attempt was made to have merchandise transported as baggage, without disclosing its presence. See also *Hawkins* v. *Hoffman*, 6 Hill, 588, where the same doctrine is announced. It was held— Mr. Justice Bronson delivering the opinion—that the contract to convey the baggage of the passenger was implied from the usual course of business, and that the price paid for fare is considered as a compensation for carrying the baggage ;· but that baggage did not include money or merchandise. In respect to innkeepers, none of the cases in which the grounds of the liability is considered, hold that he is entitled to any separate compensation for the care of the guest's property, and as he is not entitled to separate compensation on account of the property, we cannot see how he can complain that the guest has in his trunk or has deposited in the safe more money than was reasonable for his travelling expenses. His implied contract covers it all, whatever it may be. *Berk-*

*shire Woolen Co.* v. *Proctor*, 7 Cushing, 423, is decisive, as authority, of this question. The sum of five hundred dollars was stolen from the trunk of the plaintiff's agent, which was in a room occupied by him in the defendant's hotel. This question was fully considered by the Court, and it was held that " the responsibility of innkeepers for the safety of the goods and chattels and money of their guests is founded on the great principle of public utility, and is not restricted to any particular or limited amount of goods or money."

Here there is no ground for saying that the guest manifested a lack of care, for he placed his money where the innkeeper assured him it would be safe. He, as innkeeper, notified his guest to deposit his money in the safe and he received it as an innkeeper in the usual course of his business, and he must respond as an innkeeper for its loss.

*Wilkins* v. *Earle*, 4 Am. Law Reg., New Series, 742, is cited by the defendant, as very cogent authority in support of his position. The decision may be sustained, perhaps, upon the ground upon which it was placed, but some of the views advanced we think are unsound and are not supported by the authorities cited. The plaintiff, in compliance with a general notice from the innkeeper, delivered to the clerk, to be deposited in the safe, a sealed package marked only with his name, and in reply to an inquiry as to what it contained, replied merely " Money." The notice required the property deposited to be " properly labelled," and the clerk informed the plaintiff that they made their guests describe their property before redelivery. The Court considered that the case resolved itself into the question, " Whether the plaintiff by depositing in the safe of the defendants the package, which he delivered to the clerk, under the circumstances under which he so deposited it, and with no more notice of its value than was given in his conversation with such clerk at the time of such delivery, was not guilty of such negligence or did not so violate the implied condition of the liability of defendants as to exempt them entirely therefrom ?" and both branches of the inquiry were answered in the affirma-

tive.   The neglect on the part of the plaintiff was in failing to disclose the amount of money in the package, but we shall not consider whether that omission was in violation of the notice, or the spirit of the Act in relation to innkeepers. The Court, after citing many cases, still feeling a doubt as to the extent of the liability of innkeepers, endeavors to determine the point by the cases relating to carriers of passengers, they being considered by the Court as analogous in principle.   But, as we have already remarked, the analogy fails because the carrier of passengers is under the implied obligation to carry with the passengers, without extra compensation, only his baggage; and that, as it is held, does not include money, except what is necessary for travelling expenses, and some cases hold that even that cannot be properly included as baggage.   The carrier has a right to demand compensation for conveying property that is not baggage, and by custom the charge depends on the value as well as the weight or bulk, and it would be a fraud upon him to attempt to saddle him with the risk, without giving him the compensation for transporting it.   If the passenger chooses to carry a large amount of money he assumes the risk of its own loss.

The Court, evidently appreciating the hardship of the case, as other Courts have done—and there is equal hardship, whether the loss falls on the host or the guest—were of the opinion that the innkeeper is held liable for clothing, ornaments of the person, including a reasonable amount of jewelry, and sufficient money to pay the travelling and other reasonable daily expenses of the guest, and that beyond those things he is not liable, unless he has voluntarily and knowingly undertaken the care and custody of them.   If any argument can legitimately be drawn from the cases of passenger carriers, in support of the limitation of the liability of an innkeeper, the latter must surely be held liable for what, as against the forum, is regarded as the baggage of the passenger.   The cases cited by the Court include as baggage a watch, articles of jewelry, a gun and the tools of a trade, if

carried in a trunk, and generally everything destined for the personal use, convenience, and even instruction and amusement of a passenger. Suppose two travellers on their way to the same destination, the one having in his possession a watch, jewelry and some other of the articles above mentiomed, and the other having the money with which he intends to purchase articles similar to those possessed by his comrade, and both are robbed at an inn. We are unable to see why the innkeeper should not be responsible to the latter as well as the former. How can it make any difference in his liability because the one chooses to wear his gold " specimen " in the form of a pin, and the other carries his in his purse ? Both are entitled to the same care and protection, and any attempt to discriminate between the liability of the innkeeper for these respective cases leads to inconsistencies if not to absurdities. This case was decided at about the same time as *Hulett* v. *Swift,* 33 New York, 571, though neither case is referred to in the other; but we prefer to follow the higher, and, in our opinion, the better authority.

VI. It is claimed that the Court erred in ordering that fifteen hundred dollars of the judgment be paid in gold coin. The verdict is general. The amount deposited by Walker, there can be no doubt, constituted a part of the gross sum of the verdict. That amount is alleged in the complaint to have been deposited in gold coin. The answer admits that he deposited a purse containing gold coin, but cannot state the amount, and denies that it exceeded one thousand dollars in value. This is an admission that the money deposited was gold coin. The Specific Contract Act provides that " in an action against any person for the recovery of money received by such person in a fiduciary capacity, or to the use of another, judgment for the plaintiff, whether the same be by default or after verdict, may be made payable in the same kind of money or currency so received by such person." The kind of money received by defendant not being in issue, and he having received the same in a fiduciary capacity, it was proper for the Court,

upon a verdict for the amount of money, to order judgment in the kind of money received by him.

VII. The value of the gold dust at its highest market value, and the coin, do not equal the verdict by the sum of one hundred and thirty-one dollars and twenty cents. It is claimed by the plaintiff that this is accounted for by interest allowed by the jury, by way of damages. But the sum does not tally with the interest on the value of the gold dust and the coin nor on the coin or gold dust alone. The jury were not instructed that they could allow interest, and there is. nothing that indicates that they have done so. The verdict is excessive in the amount mentioned.

Judgment reversed and cause remanded for a new trial, unless plaintiff within twenty days after receiving written notice that the remittitur is filed in the Court below, release one hundred and thirty-one dollars and twenty cents of the judgment, and if such release is filed then the judgment shall stand affirmed.