HARVARD LAW LIBRARY

## MATEER *vs.* BROWN.

The decision in *Ringgold* v. *Haven,* (*ante, p.* 108,) that the power of compulsory non-suit exists, approved.

Where a party moves for a nonsuit upon a specific ground, he cannot, on appeal, assume a different position.

If the evidence of the plaintiff will not authorize a jury to find a verdict for him, or, if the court would set it aside, if so found, as contrary to evidence, it is the duty of the court to nonsuit the plaintiff.

The declarations of an agent or servant are admissible in evidence against the principal, only when they form a part of the *res gestæ;* and the declarations of a barkeeper to a third person, as to the contents of a package left by a guest in the charge of the innkeeper, when not made, in any way, in the discharge of his duty as barkeeper, are not admissible in an action against the innkeeper to prove the contents of the package.

An innkeeper, like a common carrier, is the insurer of the goods of his guest, and is bound to keep them safe from burglars and robbers without, as well as from thieves within, his house: but he can be held to this strict liability only for such goods as are brought into his house by travellers in the character of guests.

*Calye's case,* (8 *Rep.* 164,) commented on; and *Burgess* v. *Clements,* (4 *M. & Selw.* 306,) and *Dawson* v. *Chamney,* (5 *Adoph. & Ell. N. R.* 164,) overruled.

APPEAL from the district court of the fourth judicial district. The action was brought to recover $5500 worth of gold dust, claimed to have been lost in the inn of the defendant, while the plaintiff was staying there as a guest. All the important facts of the case will be found in the opinion of the court.

*Calhoun Benham,* for plaintiff.

*Mr. Parburt,* for defendant.

*By the Court,* BENNETT, J. It was decided, at the last term, in the case of *Ringgold* v. *Haven & Livingston,* that the power of compulsory nonsuit exists. We think the rule convenient, reasonable, and well supported by authority, and we shall adhere to it. On the trial of this cause, after the plaintiff had closed his evidence, the defendant moved for a nonsuit, " on the

" ground that the plaintiff had not proved by competent testi-
" mony the loss of any property of definite value." This being
the only position taken in support of the motion, unless that be
tenable, the nonsuit was properly refused, notwithstanding
there may have been other good and sufficient reasons, for
which, if urged at the proper time, it might have been demand-
ed. A party making his motion on one ground, thereby impli-
edly waives all others. He cannot avail himself of a different
position, on appeal, from that which he assumed in the court
below. This doctrine is well established, and is necessary to be
sustained, in order that the plaintiff may not be misled in the
course of the trial, and in the settlement of his bill of exceptions
in case the nonsuit should be ordered.

The general rule by which courts should be guided in deter-
mining whether a nonsuit, when applied for, should be ordered,
is, that if the evidence given by the plaintiff would not
authorize a jury to find a verdict for him, or, if the court would
set it aside, if so found, as contrary to evidence, in such case it
is the duty of the court to nonsuit the plaintiff. (1 *Wend.* 376;
6 *id.* 436; *Ringgold* v. *Haven & Livingston, above cited,
ante, p.* 108.)

Let us apply these rules to the case before us. We must,
however, first remark, that the question of the admissibility of
the evidence objected to, is one, with which, in determining the
point now under consideration, we have nothing to do. As-
suming, then, that the evidence was admissible for the purpose
of affecting the defendant, was it of such weight that a jury
might legally and properly infer from it that the plaintiff had
" lost any property of a definite value ?"

Dexter, one of the witnesses for the plaintiff, testified that
Higgins, the barkeeper of the defendant, stated in a conversa-
tion between them, " that the plaintiff had made his pile," and
that, on opening a closet and raising a bundle, he said " it was
the plaintiff's, and that it was about six thousand dollars." If
this be legal evidence for any purpose, then, certainly, a jury
might infer from it the value of the contents of the bundle.
The evidence to prove the loss is not quite so strong ; but it

Mateer *v.* Brown.

seems, from the course of the trial, that this was an uncontested and admitted point, and that the jury would have been warranted in finding the affirmative from the circumstances proved. The nonsuit was therefore properly refused.

We cannot review the propriety of the refusal to nonsuit on the ground that the plaintiff did not show himself to have been a guest in the house, because the motion for nonsuit was put upon a different ground.

The next question is as to the admissibility of the evidence objected to. Higgins was the barkeeper of the defendant when the gold dust, as is claimed, was received into the inn, and during the subsequent time down to the loss. It was argued by the plaintiff's counsel, that, as Higgins was the agent of the defendant, the latter was bound by his declarations touching the subject matter in controversy. The following questions were put to the witness Dexter : " State what you heard Hig- " gins the barkeeper say with regard to any money or gold dust " received from Mateer ;" and " State what Higgins said at the " time about the robbery." These questions or directions, the court, after objection by the defendant, permitted to be answered. It is asserted that the testimony given in reply to these directions, was admissible as a part of the *res gestæ.* At the same time it is conceded that the declarations of Higgins, thus proved, were not made at the time of the delivery of the gold dust by the plaintiff and the receipt of it by the defendant. Thus the question is presented, whether the declarations of an agent or servant made to a third person concerning a deposit of which he has charge for his principal, at any time during the continuance of such charge, are competent evidence against the principal.

Greenleaf, (1 *Law of Ev.* 126,) says that " where the acts of " the agent will bind the principal, there his representations, " declarations, and admissions, respecting the subject-matter, " will, also, bind him, if made at the same time, and constitut- " ing a part of the *res gestæ.* They are of the nature of original " evidence, and not of hearsay ; the representation or statement " of the agent, in such cases being the ultimate fact to be proved,

" and not an admission of some other fact. But it must be
" remembered, that the admission of the agent cannot always
" be assimilated to the admission of the principal. The party's
" own admission, whenever made, may be given in evidence
" against him ; but the admission or declaration of his agent
" binds him only when it is made during the continuance of the
" agency, in regard to a transaction then depending, *et dum*
" *fervet opus*. It is because it is a verbal act and part of the
" *res gestæ*, that it is admissible at all; and therefore it is not
" necessary to call the agent himself to prove it ; but wherever
" what he did, is admissible in evidence, there it is competent
" to prove what he said about the act while he was doing it."
As to any other facts, in the knowledge of the agent, he must
be called to testify, like any other witness. (*Id.* 134.)

Were the declarations of Higgins a part of the *res gestæ*, ac-
cording to the above rules? We think not. There was no act
done by him, in his character of agent, at the time of making
them, which would have been admissible evidence against the
defendant, and which such declarations were calculated to
qualify or explain. They were not made at the time he received
the deposite ; had they been then made, they would, perhaps,
have been competent. They were made when Higgins took the
bundle out of the closet to exhibit it to a stranger. This was
not done by him in the discharge of his duties as agent, and the
declarations accompanying that act were but hearsay. It is im-
possible to tell what weight this improper evidence had on the
mind of the court, in forming its judgment. We cannot
clearly see that it had no effect, and, consequently, a new trial
must be granted.

As the cause is to be re-tried, it is proper that we should ex-
press our views in relation to the other points in the case. The
defendant insists that he is not liable in consequent of certain
rules, adopted by him for the government of his house, and a
copy of which he kept posted up in his bar-room. The 11th of
these rules was as follows :—" The proprietor will not be ac-
" countable for any boxes, bundles, bags, trunks, chests,
" clothing, specie, gold dust, bullion, or any other articles or

Mateer *v.* Brown.

" material whatever, unless delivered to his especial care, and
" a receipt given for the same."

It is unnecessary to determine whether an inkeeper, any more
than a common carrier, can limit his legal responsibility by
notice, or, if he can, whether it is not essential that actual
knowledge of the notice should be brought home to his guest;
inasmuch as we think that the requirement of the notice in this
case was, so far as the plaintiff had any thing to do, complied
with. The delivery of the bundle to the barkeeper and agent
of the proprietor, was a delivery to the " especial care" of the
proprietor, within the meaning of his regulation; and the plain-
tiff ought not to suffer from the neglect of the barkeeper to give
a receipt.

The remaining questions relate to the general principles on
which the liability of innkeepers is based. It is claimed by the
defendant that his house was burglariously entered, the bar-
keeper overcome by force, and the property carried off by
robbers; and that these circumstances exonerate him from lia-
bility. The question, then, is, whether robbery from without,
or burglary, will excuse an innkeeper for the loss of the goods of
his guest; and the answer to it does not appear to be settled by
the authorities.

Chancellor Kent, (2 *Comm.* 591,) says that innkeepers are re-
sponsible to as strict and severe an extent as common carriers,
while, in another place, (*id.* 593,) he limits their responsibility
to losses occasioned otherwise than by inevitable casualty, or
by superior force, as robbery. Judge Story, in his work on
bailments, (*sec.* 472,) says, that innkeepers are not responsible
to the same extent as common carriers; that the loss of the
goods of a guest, while at an inn, will be presumptive evidence
of negligence on the part of the innkeeper or of his domestics;
but that he may, if he can, repel this presumption, by showing,
that there has been no negligence whatever, or that the loss is
attributable to the personal negligence of the guest himself; or
that it has been occasioned by inevitable casualty or by superior
force. Thus, he continues, although a common carrier is liable
for all losses occasioned by an armed mob, (not being public

enemies,) an innkeeper is not, (*as it should seem,*) liable for such a loss. Neither is he liable, (*it should seem,*) for a loss by robbery and burglary by persons from without the inn. It will be observed that the commentator advances this latter doctrine with some degree of hesitation and doubt, and in language which implies that he did not himself consider it as settled. Sir William Jones, in his essay on bailments, (*p.* 94,) says, it has long been holden that an innkeeper is bound to restitution, if the trunks or parcels of his guests, committed to him either personally or through his agents, be damaged in his inn, or stolen out of it by any person whatever; and yet, he says, (*p.* 96,) that it is competent for the innholder to repel the presumption of his knavery or default, by proving that he took *ordinary* care, or that the force which occasioned the loss or damage was truly irresistible.

It thus appears, that, while Judge Story leaves the point under consideration at loose ends, the two other distinguished commentators above cited are still more uncertain, as neither of them apparently agrees with himself; and from their opposing rules, it is difficult to determine to which side of the question they intended to adhere. The contradiction found in the writings of commentators, as well as the diversity which exists in the decisions on which their various statements are rested, seem to have sprung out of a departure from the principles on which the extraordinary liability of innkeepers and common carriers is based, and from what appears to be an erroneous construction put upon the doctrine laid down by Lord Coke in *Calye's case,* (8 *Rep.* 32.) Thus Judge Story and Chancellor Kent, in support of the position that an innkeeper is not liable for a loss of the goods of his guest occasioned by robbery and burglary, rely in part, at least, on the authority of *Calye's case,* while Sir William Jones cites no authority whatever in support of the strange proposition that the innholder may escape from responsibility by proving that he took *ordinary* care of the goods of his guest. Following in the track of the same departure from principle, in which commentators have wandered, are several decisions of recent date. Such are *Burgess* v. *Cle-*

ments, (4 *M. & Selw.* 306 ;) and *Dawson* v. *Chamney*, (5 *Adolph. & Ell. N. R.* 164.) The tenor of *Calye's case*, however, sanctions no such doctrine, although the particular passage in it, by which the lax rule of the responsibility of innkeepers is sought to be sustained, appears, at first sight, to be somewhat uncertain. It is there laid down, that the innholder shall not be charged, unless there be a *default* in him or his servants, in the *well and safe keeping and custody* of the guest's goods and chattels within his common inn ; for the innkeeper is bound in law to *keep them safe,* without any stealing or purloining ; and it is no excuse for the innkeeper to say, that he delivered the guest the key of the chamber in which he is lodged, and that he left the chamber door open ; but he *ought to keep the goods and chattels of his guest there in safety.* But if the guest's servant, or he who comes with him, or he whom he desires to be lodged with him, steals or carries away his goods, the innkeeper shall not be charged ; for there the fault is in the guest to have such companion or servant. So, also, if the innkeeper require his guest to put his goods in such a chamber under lock and key, and then he will warrant them, otherwise not, and the guest lets them lie in an outer court, where they are taken away, the innkeeper shall not be charged, for the fault is in the guest. Lord Coke is here commenting on the writ in the *Register Brevium,* which recites that, by the custom of the realm, innkeepers are obliged to keep the goods and chattels of their guests, which are within their inns, without subtraction or loss, day and night, so that no damage, *in any manner,* shall thereby come to their guests, from the *default (pro defectu)* of the innkeeper or his servants.

The reasoning of Coke is simply this. The innkeeper is bound by law to keep the goods of his guest *safely ;* if he does not perform this obligation, the law, which imposes on him the responsibility, declares him to be in default ; but if the loss of the goods be ascribable to the fault of the guest, then the innkeeper is excused, for the words of the writ are *from the default of the innkeeper or his servants.* He makes no distinction between losses occasioned by superior force, by robbery by persons

within the house and persons from without, by secret theft, or by an armed mob. On the other hand, he apparently discountenances the distinction; for he says, " these words *absque subtractione seu omissione*, extend to all moveable goods, although of them felony cannot be committed; for the words are not *absque felonica captione*, &c., but *absque subtractione*, &c. It strikes us forcibly that the uncertainty and confusion which have been thrown over this branch of the law have arisen from confounding the word *defectu* in the writ, and the word default used by Lord Coke as its translation, with the term negligence; an error into which Judge Story himself seems to have fallen. (*Story on Bailments, sec.* 470.) The question of negligence does not, acccording to the language of the writ in the *Register Brevium* or the Commentary of Coke, constitute a subject for discussion in ascertaining the responsibility of innkeepers, any more than it does in ascertaining that of common carriers. The law requires of the former to keep the goods safely, as it does of the latter to carry them safely, and in case either fails, from any cause, to comply with this legal obligation, the law pronounces him in default, unless the loss be occasioned through the fault of the owner of the goods, or by the act of God, or by the public enemies. It seems, therefore, that the dictum of Mr. Justice Bayley in *Richmond* v. *Smith*, (8 *Barn*, and *Cress.* 9,) is a concise and accurate summary of the doctrine of Calye's case. " It appears to me," he says, " that the innkeeper's liability very closely resembles that of a carrier. He is *prima facie* liable for any loss not occasioned by the act of God or the king's enemies; although he may be exonerated where the guest chooses to have his goods under his own care." And although that dictum has been overturned in England by the subsequent decision in *Dawson* v. *Chamney*, (5 *Adolph. & Ell. N. R.* 164,) we think the dictum right, and the decision wrong. Stephen, in his Commentaries, (2 *Comm.* 133,) says that an innkeeper is responsible for the goods and chattels brought by any traveller to his inn, in the capacity of guest there, in every case where they are lost, damaged, stolen, or taken by *robbery*, except where they are stolen by the traveller's own

servant or companion, or from his own person, or from a room which he occupied as a mere guest, or entirely through his own gross negligence; and Mr. Chitty, in a note to Blackstone's Commentaries, (1 *Comm.* 430, *note* 22,) declares it to be long established law, that the innkeeper is bound to restitution, if the guest is *robbed* in his house *by any person whatever* unless it should appear that he was robbed under circumstances like those which, as above seen, constitute admitted exceptions. In the recent case of *Mason* v. *Thompson,* (9 *Pick.* 280, 284,) it has been laid down in Massachusetts, that innkeepers, as well as common carriers, are regarded as *insurers* of the property committed to their care, and are bound to make restitution for any injury or loss, not caused by the act of God, or the common enemy, or the neglect or fault of the owner of the property. And in *Grinnell* v. *Cook,* (3 *Hill,* 488,) Mr. Justice Bronson states the rule in the following words: "The innkeeper is bound "to receive and entertain travellers, and is answerable for the "goods of the guest, although they may be stolen or otherwise "lost *without any fault on his part.* Like a common carrier, "he is an *insurer* of the property, and nothing but the act of "God or public enemies will excuse a loss." It thus appears that some courts as well as commentators are, at length, returning to the sound and healthy principle of the common law, which places the liability of innkeepers and carriers on the same ground. And why should there be any distinction? "Rig- "orous as the law in relation to innkeepers may seem," says Sir William Jones, (*Bailments,* 95, 96,) "and hard as it may ac- "tually be in one or two particular instances, it is founded on "the great principle of public utility, to which all private con- "siderations ought to yield; for, travellers, who must be nu- "merous in a rich and commercial country, are obliged to rely "almost implicitly on the good faith of innholders, whose edu- "cation and morals are usually none of the best, and who might "have frequent opportunities of associating with ruffians or "pilferers, while the injured guest could seldom or never ob- "tain legal proof of such combinations, or even of their neg- "ligence, if no actual fraud had been committed by them."

Now, these are the very reasons assigned by the law for the extraordinary responsibility imposed on common carriers; and, the reasons for the rule being the same in both cases, there is, in principle, no propriety in making a distinction. We think that an innkeeper is bound to keep the property of his guest safe from burglars and robbers without, as well as from thieves within, his house.

One point further remains to be considered. It appears from the testimony, that the bundle, which is claimed to have contained the gold dust, was not taken to the defendant's inn until several days after the plaintiff became his guest. As, in order to entitle the plaintiff to recover, it is necessary for him to establish his character of guest in the inn of the defendant, so also it is equally necessary that it should appear that his goods were taken there in the capacity of guest. (2 *Stephen's Comm.* 133.) The liability of the innkeeper results from the relation of guest in which the traveller stands to him, and extends only to those things which properly pertain to him in that relation. (*Calye's case* above cited.) It does not necessarily follow that the strict responsibility can be imposed on an innkeeper for all property, which his guest may choose to bring into the inn, after he has been received *infra hospitium;* or that the latter may make the former a compulsory depositary of any amount of goods or treasure, which, during his sojourn in the inn, he may desire to keep secure. The innkeeper is bound by law to receive the traveller and his goods, and, for a refusal, in case he has sufficient accommodations for him, he is liable not only to an action on the case for the private damage, but to indictment for the public wrong. (3 *Blackstone's Comm.* 164; 4 *Stephen's Comm.* 296, *note n.*) Inns are instituted for passengers and wayfaring men; and the keepers thereof can be held to the strict legal liability only for such goods as are brought into their inns by travellers in the character of guests. It would be too great a responsibility if that liability could be extended so as to cover any conceivable amount of money or gold dust, which the traveller, after he has become a guest, might be disposed to thrust into the custody of his host, and thus compel him to become the

insurer of its safety.   We think, in this case, it is a question which the jury should decide, whether the bundle was taken to the inn of the defendant by the plaintiff in his character of guest, in which event the defendant's liability would cover all losses, or whether, after the plaintiff became a guest with the defendant, it was deposited there in the nature of an ordinary bailment, in which case the defendant would be bound to exercise no more, at the farthest, than ordinary diligence, and would be answerable, certainly, for nothing more than ordinary neglect.

New trial granted, costs to abide the event.