Owen, .J-
1. Did the trial court err in admitting, against the objection of the defendant, the statement of the witness. Holloway ?
The amount of money deposited by the plaintiff below was in controversy. The testimony objected to was material. It appears from the opinion of the trial judge, to which we are referred by counsel, that it exercised important effect in the determination of the case.
The witness was asked if he knew how much money Wiatt had in his card-playing house on the morning of the 14th or night of the 13th of 'October. He answered : “No, sir; I know what he ought to have had.” Counsel then inquired, “You know what he ought to have had?” This was objected to. The question and objection wore repeated. The objection was overruled, and exception taken. The answer was: “Well, he was responsible for twenty-five hundred dollars; I do not know whether he had that or one hundred dollars; he was supposed to have had twenty-five hundred dollars in his possession.”
It seems too clear for serious discussion that this was erroneously admitted and considered. The statements made by the plaintiff below concerning the amount of money contained in the package deposited were involved in much doubt and uncertainty. Holloway was his only coroborating witness. The statement objected to could have had but one effect — to prejudice the defendant below. Eor this error alone we should feel called upon to reverse the judgment below. We do not, however, place our action wholly upon this ground.
2. Was Wiatt a guest of the hotel at the time he delivered to the clerk the package containing the money involved in suit ? This is the vital issue in the case. That the money was deposited and lost is assumed. It is maintained by defendant in error that this was a question of *40 fact, and that the judgment of the trial court upon the evidence is conclusive.
Conceding that there was substantial conflict in the evidence upon this issue, the position of counsel is well chosen. If, however, the facts are definitely ascertainable from the undisputed evidence, whether Wiatt was a guest of the hotel is a question of law. We do not undertake to weigh conflicting proof. If there was evidence fairly tending to prove Wiatt a guest of the hotel at the time he deposited his money with the clerk, the judgment below is, upon that issue, conclusive. If, however, the evidence offered upon this issue, construed most favorably to the plaintiff below, does not faii’ly tend to establish that relation, it is our duty to say, as a legal conclusion, that the judgment below is erroneous.
The arguments of counsel, aside from the alleged error in admitting the statements of Holloway, and whether Wiatt was a guest, are chiefly addressed to the question whether Wiatt, being a resident and householder of the city of Cincinnati at the time he left his money with the clerk of the hotel, and not in any sense a traveler, was capable of becoming a guest of the hotel, and of charging its proprietor with the safe keeping of his money. Without entering upon the consideration of this question, we are content to assume, without deciding, that Wiatt was so capable of becoming a guest, and to proceed with the consideration of the proof which is relied upon to establish such relation.'
It must be conceded that unless the relation of innkeeper and guest subsisted between Wiatt and the proprietor of the hotel at the very time the money was received by the clerk, or at the time of the loss, no recovery could be had for such loss.
The testimony produced in behalf of the plaintiff below, reflecting upon what occurred after he entered the hotel and before his departure therefrom (having deposited his money), is confined to three witnesses; the plaintiff himself, one Mullen, and Scott, a bell boy of the hotel.
Wiatt testified that he entered the hotel about ten minutes after two o’clock in the morning, accompanied by his *41 friend Mullen, and applied to the clerk for accommodations.
He says: “I asked for accommodations that night; I says to him: ‘How are you fixed for accommodations?’ He says : ‘ Very well, as we have not been doing very much since the Exposition.’ I says: ‘Very good, let me have a room, and I will stop with you to-night.’ He says: ‘All right, I will just take your name. I am busy now making up my night account. I will just take your name.’ I says : ‘ Very well, I have been eating something and T do not care about retiring now, I will be back in perhaps a half an hour.’”
Repeating, he testifies : “ I says : ‘ I want a room.’ At the time he was busy at the side desk, looking over some books. He says: ‘ I am engaged now, just making up my night account, or night report;’ says he: ‘I will take your name and reserve you a good room.’ I says : ‘ Very good.’ I then produced this package of money. I said: ‘ I would like to leave this with you.’ ”
He delivered the package to the clerk and received, as a check for it, a slip of paper with his name written thereon by the clerk. He says: “ I then passed out through the west end of the Arcade ; some question was asked me by my friend, and I says: ‘ I was going up as far as Mr. Wallace’s, The Turf Exchange.’ Q. Bid you go there that night ? A. Yes, sir. Q. You say some one was with you, who was that ? A. Mr. Mullen. Q. Bid he accompany you to Wallace’s ? A. Yes, sir. Q. When did you leave there ? A. I left there in the neighborhood of five o’clock. Q. Where did you go to then ? A. Birect from there to - the Hotel Emery.”
Without reciting his testimony concerning what occurred upo,n his return to the hotel, it will suffice to say that the clerk and the money were missing; he soon became concerned for his money, and these, with other circumstances, may sufficiently account for his failure to take a room for the balance of the night, or morning.
He further testified that there was $2,195 in the package *42 left with the clerk, and that his business required about that amount of money. The foregoing testimony was in chief.
Then follows :
“Cross-examination by Mr. Jenney: Q. You say your business requires that much money; what is your business ? A. I was engaged in operating a club room here.
Q. To speak plainly, a gambling room? A. Yes, sir.
Q. Where is it? A. At No. 266 Yine street. Up over Gilligan's place.
Q. You were playing that night? A. I was doing business.
Q. Yon were carrying on business that night ? A. Yes, sir.
Q. After you left the Hotel Emery, did you carry on business botli before and after you left the Hotel Emery? A. No, sir; not after I was in there.
Q. You were not? A. No, sir; I left this money at the hotel as a safeguard.
Q. Because you did not want to carry it around? A. Yes, sir.
Q. You left the money there simply for safe keeping? A. No, sir; I didn’t.
Q. What was your object in leaving it there ? A. I left it there as a guest of the hotel.
Q. Why did you leave it there ? A. I left it there not wanting to carry it on my person that time in the night.
Q. You left the hotel and you expected to go out around the city? A. No, sir; I didn’t expect to go; if I had found agreeable friends in the hotel I should have perhaps staid there and smoked, and perhaps not went out at all.
Q. You are a married man ? A. Yes, sir.
Q. You are keeping house.? A. Yes, sir.”
After stating that he was keeping house at the time of his loss, and that his wife had gone to attend upon and remain with her invalid mother on the night in question, he testifies:
“ After attending to my business, it being rather late, and the neighborhood being rather a disreputable one, as *43 everybody knows that is familiar with it, I did not care to carry this amount of money with, me, and go home and not find anybody there; and I told my wife I would stop down at the hotel to-night. So I had considered the matter before I left my place of business, that I would stop at the Hotel Emery. I had no intention of going home that night.”
His friend, Mullen, testifies in chief:
“ Examined by Mr. Campbell—
Q. On the night or morning of the 14th of October, you may state whether, or not, you were in company with Mr. Wiatt; were you with him ? A. Yes, sir.
Q. Where did you meet him that evening, first ? A. I met him at Andy Gilligan’s.
Q. Where did you go from there with him? A. We went down Mine street to Bessehl’s, or IlarfF & Kramer’s.
Q. What did you do there ? A. We had a glass or two of beer, and something to eat — we had some oysters.
Q. From there, where did you go ? A. I proposed to Mr. Wiatt to go up home; I had been in the habit of going home with him frequently; probably three or five times a week I would go partly home with him; he said that he was not going home that evening, -that his wife was absent.
Q. Then, where did you go? A. We went down to the Hotel Emery.” ... «
“ O. You said the clerk asked him if he wanted a single or double room ? A. Yes, sir.
Q. Mr. Wiatt responded, what ? A. That he wanted a single room.
Q. What next occurred ? A. He asked him if ho wanted to go to bed now; he said, ‘No, not right now; I want to leave some money here, and I will be back after a while.’ He pulled out his package, and asked for an envelope to put it in.”
On cross-examination, he says:
“ Q. Mr. Wiatt said that he did not want to go to bed, *44 but that he would be back after a while? A. He said something about being back after while.
Q. He did’ut want a room then? A. He said something about wanting a room. He asked if they had a room, and the clerk told him that they had room, and he asked him if he wanted a single or double room, .and he said a single one, and the clerk said they could accommodate him; and he said, he did n’t want to go to bed now, and the clerk said, I will reserve you a room; and then Mr. Wiatt said, ‘here, I want you to take care of this,’ and ■ took out his money.”
The witness, Scott, testified as to what transpired between Wiatt and the clerk, as'follows:
■ “ Q. What did Mr. Wiatt say? A. He came in and asked how he was fixed for accommodations.
Q. Yes, what was said ? A. He said very well, not been doing much since the Exposition.
Q.- And what more was said; any thing else? A. He said that he wanted a room. I was sitting over there, and the clerk, knowing I was a bell-boy, he called me over and said, take this gentleman to a room. Mr. Wiatt said: ‘ Not just now ; I am going out.’
Q. Do you know whether he gave any money to the clerk? A. Yes, sir.”
The foregoing comprehends, substantially, the testimony Which is most favorable to Wiatt, concerning what occurred at the time he delivered his money to the clerk, and bearing upon the relation which then subsisted between the former and the proprietor of the hotel.
/At the time the clerk took charge of his money, Wiatt had not registered his name; it was not entered upon any of the books of the hotel; no room had been assigned him; and while it is not necessary to contend that all, or any, of these facts were necessary to constitute him a guest of the hotel, they are valuable aids in determining, in the light of the other proof in the case, whether that relation in fact existed. There is proof which may account for his failure to register. Still, if he had registered, and this is *45 shown to have been for the purpose of securing a safe depository for his money, it would not avail him.
It will not do to contend that the deposit of his money contributed to constitute him a guest. Unless he was a guest, the clerk had no authority to bind his principal by receiving the money.
In Carter v. Hobbs, 12 Mich. 52, it is held:
“In order to make one liable as innkeeper at the common law, for goods lost at his inn, it must appear that he was acting in the capacity of innkeeper on the occasion when the goods were received, and that the ownei was his guest; in other words, that the latter visited the inn for purposes which the common law recognizes as the purposes for which inns are kept.”
In Gelley v. Clerk, Cro. Jac. 188: Defendant was an innkeeper at Ubridge. Plaintiff was his guest. Plaintiff left his goods at the inn, and went to London, saying he would return in two or three days. He returned within three days and found his goods had been stolen. Action on the case was brought for the value of the goods, and it was held:
“If one come to an inn and leave his goods and horse, and go into the town, and afterward returns; and in the meantime his goods are stolen, no doubt but he is a guest, and shall have a remedy. And so was Sir Edwin Sands’s case; for his absence iu part of the day is not material, but he is always reputed as a guest. So, where one leaveá his horse at an inn, to stand there by agreement at livery, though neither himself nor any of his servants lodge there, he is reputed a guest for that purpose, and the innkeeper hath a valuable consideration; and, if the horse be stolen, he is chargable with an action, upon the common custom of the realm. But, as in the case at the bar, where he leaves goods to keep, whereof the defendant is not to have any benefit, and goes from hence for two or three days, although he saith be will return, yet he is at his liberty, and therefore is not a guest during that time, nor is the innkeeper chargeable as a common hostler for the goods *46 stolen during that time, unless ho make an especial promisee for the safe keeping of them ; and the action should be grounded upon it.”
In Grinnel v. Cook, 3 Hill, 485, the court held :
“ An innkeeper is bound to receive and entertain travelers. If a traveler, having stopped at an inn, leave his horse there and go out to dine or lodge with a friend, he does not thereby cease to be a guest. The same rule holds good, so far as relates to property, for the care and keeping of which the innkeeper is to receive a compensation, though the traveler leave the inn to go to a neighboring town, intending to be absent several days. Otherwise, however, in respect to inanimate property, from which the host derives no advantage.”
“ If a traveler leave his horse at an inn, he shall be deemed a guest, even though he lodges elsewhere; but not, if he leave any dead thing as luggage.” Wharton’s Innkeepers, 76.
An innkeeper is not bound to receive the goods of a person who only desires the use of the inn as a place of deposit. Ibid. 79; Bennet v. Mellor, 5 Term R. 274; Mateer v. Brown, 1 Cal. 221.
The inquiry is suggested here, in the light of the citation from Carter v. Hobbs, supra: Did Wiatt visit the hotel, on the morning in question, “ for purposes which the common law recognizes as the purposes for which inns are kept” ?
That he did not stand in need of, and that he did not desire nor ask for, the present accommodations of that hotel, at the time he first stood at its office counter, is so overwhelmingly established by the proof, as to exclude every other conclusion.
He testifies for hims'elf, that when the clerk said he would take his name, “I says: ‘Yery well, I have been eating something and do not care about retiring now. I will be back in perhaps half an hour.’” He then passed out, went to the “Turf Exchange,” and remained until 5 o’clock. His friend and witness, Mullen, testifies that the clerk asked him (Wiatt) if he wanted' to go to bed now, *47 and he said, “No, not right now; I want to leave some money here, and will be back after awhile.” His witness, Scott, testifies: “ The clerk, knowing I was a bell-boy, he called me .over and said take this gentleman to a room. Mr. Wiatt said, ‘Not just now; I am going out.’”
What was he there for? To the suggestion that he may have been prospecting for lodgings in advance gf his actual needs, the obvious answers are (1) he does not say so, and (2) he conclusively silences all cavil upon this question by his statement: “So I had considered the matter before I left my place of business, that I would stop at .the Hotel Emery. I had no intention of going home that night.”
He had already, it' seems, unconditionally selected his lodgings. He was no stranger at that hotel.’ He had been a frequent day guest of the house. He testifies, in chief:
“ I have been a patron of the Hotel Emery for. four years or over.”
This leads us to the further vital inquiry: Why did he go to that hotel in advance of his actual present need of the entertainment and accommodations which it was prepared to afford its guests ?
There is one answer, and only one, to be found in the proof to this question.
Wiatt testifies, that after he had delivered his package of money to the clerk and received the check for it, “ I then passed out through the west end .of the Arcade. Some question was asked me by my friend (Mullen), and I says I was going up as far as Mr. Wallace’s — the Turf Exchange.” He further says, on cross-examination :
“ I left this money at the hotel as a safeguard. •
Q. Because you did not want to carry it around ? A. Yes, sir.
Q. You left the money there simply for safe-keeping ? A. No, sir; I didn’t.
Q. What was your object in leaving it there? A. I left, it there as a guest of the hotel.”
This answer involves the statement of no substantive fact. It is a mere conclusion. It assumes the principal *48 fact in controversy — that the witness was a guest of the hotel. It involves no contradiction of any fact which the proof tends to establish. Immediately following this answer is the “ Question. Why-did you leave it .there? A. I left it there, not wanting to carry it on my person that time in the night.
Q. You left it there and you expected to go out around the city? A. No, sir; I didn’t expect to go; if I had found agreeable friends in the hotel, I should have perhaps stayed there and smoked, and perhaps not went out at all.”
There is much force in the following observation of counsel for plaintiff in error concerning this answer:
“ This ,is no't sustained by other parts of his testimony. He came there with Mullen, with whom he had been eating oysters and drinking beer, and who had been in the habit of partly going hoihe with him from three to five times a week, and who accompanied him when he left the hotel. Mullen must have been an agreeable friend, else he would not have been so much in his company, and his alleged excuse for not staying at the hotel is untenable.”
It is a conclusive answer, however, to the claim that this statement of Wiatt is in conflict with the other proof, to say that at best it is a statement of his own secret intentions, wholly undisclosed to the hotel company, through its clerk or otherwise, and in sharp collision with every act and word of his at the time he left his money with such clerk. It is mere speculation, on the witness stand, upon what “perhaps” might have, but did not, happen at the time of the deposit of his money. The facts made known to the clerk, the conduct and language of Wiatt in his presence with the other facts which transpired at the time, made it his plain duty to refuse to receive the money, and it was beyond his power to bind the proprietor of the hotel by its receipt.
But Wiatt further testifies, as we have seen : “After attending to my business, it being rather late, and the neigh *49 borhood being rather a disreputable one, ... I did not care to carry this amount of money with me, and go home and not find anybody there,” etc.
Mullen says that he (W.) said to the clerk: “ I want to leave some money here, and will be back after awhile. . '. . He said that he did n’t want to go to bed now, and the clerk said, I will reserve you a room; and then Mr. Wiatt said, ‘Here, I want you to take care of this,’ and took out his money.”
The one answer to the inquiry, as to the purpose of his first visit at that hotel at 2 o’clock in the morning is: He sought it as a safe depository for his money, that he might be free to follow the promptings of his own' will and pleasure for the balance of that night with no risk of its loss. This is the only rational conclusion from the testimony, and furnishes the true solution of his failure to register, of the absence of his name from all the books of the hotel; of the fact that no room was assigned him ; that he did not insist upon having a room assigned ; that he did not ask or desire to be shown to a room; that it was after 5 o’clock in the morning when he returned to the hotel; and to all that transpired during his first visit there.
Innkeepers are not liable as such for goods deposited with them by any but guests of their inns. While an individual proprietor of an inn may incur a liability as bailee for the safe keeping of goods which he has voluntarily undertaken to keep for others than guests, it is not within the course of employment of a mere clerk of such innkeeper to receive on deposit the goods of any except guests of the inn, and if he does so, it is a transaction between him and the owner, and no liability for the loss of such goods attaches to the innkeeper.
It will be observed that we have confined the consideration of this branch of the case to the simple question : Was Wiatt a guest of Hotel Emery at the time of the deposit of his money with its clerk? If he was a guest at that time, his subsequent conduct did not dissolve or affect *50 the relation existing at the time of such deposit. If that relation did not exist at that time, his subsequent conduct could not create it; although, if the direct evidence upon that issue had been involved in conflict, it would have been proper to consider such subsequent conduct in determining the actual relation of the parties at the time of such deposit.
As the evidence did not fairly tend to prove Wiatt a guest of the hotel at the time of the deposit of his money, there was error in rendering judgment for him, and in overruling the motion for new trial.

Judgment reversed and cause remanded.