MARSHALL J. RUSSELL *v.* THOMAS FAGAN.

*Innkeeper—Guest—Responsibility.*

An innkeeper is bound for the safe keeping of the beast of his guest.

Guests of an inn are travelers or wayfarers alone, and it is for them alone that the extraordinary responsibility of the innkeeper exists, and not for boarders or persons residing in the same place.

A traveler or wayfarer who seeks and obtains entertainment for his beasts upon consideration of reward or pay charged him by the innkeeper, is a guest, though not receiving personal entertainment; and while such entertainment for his beast continues, he is absolutely liable for any damage or loss to the same, except such as arise from inevitable accident, the public enemy, or the act or conduct of the guest or his friends or servants.

*(New Castle, November 29, 1886.)*

ACTION ON THE CASE to recover for the loss of a mare while in the stable attached to the defendant's inn.

The facts fully appear from the charge of the Court.

*Levi C. Bird* and *A. E. Sanborn*, for plaintiff, cited :

*Shaw v. Berry*, 31 Maine, 478 ; *Coggs v. Bernard*, 1 Smith L. Cas., 375 ; *Mateer v. Brown*, 1 Cal., 221 ; Story, Balm., §477 ; *York v. Grindstone*, 1 Salk., 388 ; *Yorke v. Greenaugh*, 2 Ld. Raym., 866 ; *Sibley v. Aldrich*, 33 N. H., 553 ; *Mason v. Thompson*, 9 Pick., 280 ; *Peet v. McGraw*, 25 Wend., 653 ; *Hulett v. Swift*, 42 Barb., 230 ; *Bennett v. Mellor*, 5 T. R., 273 ; *Hall v. Pike*, 100 Mass., 495 ; *McDaniels v. Robinson*, 26 Vt., 316 ; *Clute v. Wiggins*, 7 Am. Dec., 448 ; *Norcross v. Norcross*, 53 Maine, 163; *Pinkerton v. Woodward*, 33 Cal., 557 ; *Berkshire W. Co. v. Proctor*, 7 Cush., 417 ; *Gile v. Libby*, 36 Barb., 70 ; *Washburn v. Jones*, 14 Barb., 193 ; *Jalie v. Cardinal*, 35 Wis., 118 ; *McDonald v. Edgerton*, 5 Barb., 560 ; *Grinnell v. Cook*, 3 Hill, 485 ; *Richmond v. Smith*, 8 Barn. & C., 9.

*Charles B. Lore* and *Harry Emmons*, for defendant, cited :

Story, Bailm., 9th Ed., §§ 470, 472, 482 ; *Merritt v. Claghorn*, 23 Vt., 177 ; 2 Kent Com., 592, 593 ; *Calye's Case*, 8 Coke, Rep., 32a ; *Dawson v. Chamney*, 43 E. C. L., 164 ; *Burgess v. Clements*, 4 Maule & S., 306 ; *Cutter v. Bonney*, 14 Am. Law Reg.,

445; *Howth v. Franklin,* 20 Tex., 798; Redf. Com. Cas., 595-597; *McDaniels v. Robinson,* 26 Vt., 316; *Johnson v. Richardson,* 17 Ill., 302; *Richmond v. Smith,* 8 Barn. & C., 9; *Metcalf v. Hess,* 14 Ill., 129; *Johnson v. Richardson,* 17 Ill., 302; 1 Pars. Cont., 4th Ed., 629; *Berkshire W. Co. v. Proctor,* 7 Cush., 417; *York v. Grindstone,* 1 Salk., 388; *Binns v. Pigot,* 9 Carr. & P., 208; *Grinnell r. Cook,* 3 Hill, 485; *Ingallsbee v. Wood,* 33 N. Y., 577; *Healey v. Gray,* 68 Maine, 489.

COMEGYS, C. J., charging the jury:

This action is brought by the plaintiff to recover from the defendant damages to the extent of $500 for the breaking of one of the hind legs of the plaintiff's mare, while she was in the defendant's stable in Wilmington.

The plaintiff is a citizen of the State of Pennsylvania, resident at Landenberg, in Chester County, and the defendant, at the time of the disaster, was and yet is a common innkeeper or hotel keeper at the sign of the White Horse in this city. On the day before the time of the accident the plaintiff, having occasion to Wilmington, came here in the afternoon and went to the defendant's inn, where he put up his mare and carriage, and at the same time delivered a quantity of oats to be fed to the horse during his stay in the city, and also a bottle of liniment, which he directed should be rubbed from time to time on her hind leg, in which she was lame—as he said—from the travel of eighteen miles. He then went away and did not return again till the next afternoon. He had no personal entertainment at the inn, nor did he ask for any—having it provided for him elsewhere.

The next morning it was discovered that the mare's leg aforesaid was broken, according to the defendant's two witnesses, by her attempting to rise in the stable, after she had shortly before lain down. Their statement is that in the morning, about 10 o'clock, they being in the stable, the mare (which the groom stated was very lame when she arrived) fell in her effort to rise; and that, one of them saying that she had broken her leg, they examined her and found that his assertion was verified. The groom swore that she had lain down for about fifteen minutes, when she attempted to rise with the consequence alleged.

The plaintiff, as a witness, in reply to a question put by his counsel, stated that when the mare was put in the stall he discovered that there was a hole in one of the side walls, a board there having been broken; but it was not stated by him that he called anyone's attention to that fact. This statement was denied by the defendant, by his groom, and by the other witness, all of whom testified that there was no hole as stated by the plaintiff; and the latter swore that a short time before he had put all the stalls in good repair, as the defendant had also sworn.

The mare was killed to relieve her suffering. This was before the plaintiff came back to the premises. As he had furnished the oats for the feed of his mare, he paid nothing to the defendant for her grain diet; but he did pay twenty-five cents for the hay given her in the stable, which was attached to and part of the inn property. Payment for the loss of the mare was demanded by the plaintiff from the defendant, but refused by the latter. Two witnesses for the plaintiff found the mare to have been worth $200; the plaintiff put her value, in his testimony upon that point, at $50 more.

These I believe to be the material facts in this case; and upon them the plaintiff asks a verdict at your hands for the proved value of the mare, with interest from the time of the casualty, the 7th day of September, 1884; and the defendant resists such demand, insisting that no liability on his part can arise out of them—his principal ground being that the plaintiff was not a guest of his inn, and his other that the accident was the result of some natural or other defect of the bone of the mare's leg, of which he could not have any knowledge, nor against accident from which he could protect himself; and that therefore the occurrence was one against which human foresight could make no provision, and comes within the exception to extreme liability in the case of carriers known to the law as inevitable accident. This we understand to be his second point.

We will briefly discuss these legal contentions of the parties and instruct you what the law is by which in this case you are to be governed:

The first question to be decided is: Was the plaintiff a guest of the defendant at the time of the accident to the mare? If he

was, then what liability to him on account of receiving the mare by defendant and placing her in his stable to be served with hay, fell upon or was incurred by such defendant? If he became liable for her return to him in as good condition as she was when the defendant received her, is there anything which will excuse such liability, and if so, did such excuse exist in this case, upon the testimony of the defendant and his witnesses? These are, under the circumstances, very interesting questions, none of which have before, in this State, been presented for consideration to a court and jury. They concern the whole traveling public, and that body of men very numerous in this country, called innkeepers, or keepers of what are now called hotels.

It is said that inns exist for the benefit of the traveling community. In fact they are almost as much a necessity to travelers as the public means of locomotion are. There was a time when anyone could keep an inn; but that is now long past, and none are allowed to maintain them but persons regularly licensed by public authority. In them wayfaring people of every kind, if they can afford the expense which the host charges for that service, can be accommodated with diet and lodging; in other words, can be entertained in their journeyings. The necessities of such people oblige them to solicit entertainment at the public or common inns, both for themselves and their beasts where they travel with such; otherwise they would be without shelter and food. Because of this necessity and that the host or entertainer is generally unknown to a party resorting to his house, or inn, and that such party is compelled to trust himself and his property to his keeping, and that he is charged by the innkeeper for such entertainment of himself and his beasts, and the custody of his property, the law holds the innkeeper to a strict liability; not from any contract between the parties, but from the duty growing out of his public employment. One of the incidents of his business of common innkeeper is that he is bound to receive and entertain all such as apply to him for that purpose, and are in fit condition to be taken into a public inn as guests, provided there be room for that purpose. There are statutory exceptions to this rule, but I am not now concerned to speak of them. Another of them is that he is bound for the safe keeping and well keeping of the beasts of the guest, and his goods,

that is, his luggage, apparel, money, etc., so that if any of them be stolen, or otherwise lost or damaged in his inn, while the relation of host and guest continues, he must make good such loss or damage.

Everyone who is received into an inn and has entertainment there, for which the innkeeper has compensation by way of remuneration or reward for his service, is a guest. The relation of host and guest exists. This general definition, however, only includes those who in a legal sense are travelers or wayfarers; and boarders, or persons who reside in the same place, are not embraced by it. It is only travelers or wayfarers that the innkeeper is bound to accept as guests, and it is for them alone that he is under extraordinary responsibility for the safe keeping of beasts and goods. Inns are for them, as the books teach us; that is, for their sustentation and nourishment and protection of their goods from depredation by thieves and robbers at stages of repose in their journeyings.

The liability of innkeepers to others than those just mentioned is not so great; but it is very adequate. Taking the definition before given in its strict sense, it would seem that the term "guest" only applies to those who lodge or obtain meat or drink, at an inn, for compensation to the innkeeper. But this, is not the case, as we think. Upon this subject the authorities are, unfortunately, not agreed; but after a careful consideration of them, especially upon review of the older ones, those nearest to the time when inns began to be recognized and controlled by law, we are satisfied that the law may be given to you by us, and we now declare it for your guidance; that if a person who comes within the meaning of the term "traveler or wayfarer," that is, being upon a journey passing over the country from place to place, or from one place to another and returning, has occasion to seek entertainment for his beasts, and obtains it for them, upon a consideration of reward or pay charged him by the host or landlord, he is in the legal sense a guest, as much so as if he had himself received personal entertainment; and while such entertainment for his beast continues, if any damage or injury happen to them or they be stolen, he is, subject to certain exceptions to be mentioned, absolutely liable for them, to the same extent as if he had undertaken against the particular damage by a special agreement.

The law makes the owner a guest because of the compensation charged by the innkeeper. The liability of the traveler for that (which attaches upon the reception of the beasts) constitutes this relation of host and guest. It is his property that is nourished, while upon his journey, and that in law is the same as if he had been in his own person the actual recipient of entertainment. It would be otherwise entirely of dead or inanimate things, left at the inn by such traveler, as to which nothing would be paid to the innkeeper. The existence of an inn involves in legal contemplation a stable attached to it also; and travelers with horses and carriages are not to be presumed to put them up at the inn to be kept there otherwise than as in inn-stables strictly; whereas, those not travelers in the sense I have been employing, but merely putting up their teams at the inn stable as a livery (as is the case with persons residing near towns who use such stables as mere conveniences) are not to be considered in the light of guests, and entitled to the same degree of protection as travelers are. They do not strictly come within the definition of travelers—persons upon a journey. Livery stable keepers are under different and less weighty responsibility than innkeepers; and they are justly without one great benefit the latter possess.

I have said that where the relation of guest in an inn exists, whether from personal entertainment or for that given to the traveler's beasts, the innkeeper is absolutely liable for all loss or damage to the property of the guest, subject to certain exceptions. They are what is called the act of God, such as earthquake, lightning, flood; the public enemy, that is, the forces of a nation engaged in hostile war with that of the innkeeper; and the act or conduct of the guest or his friends or servants. The first of these is aptly called inevitable accident without the intervention of man (2 Kent Com., 597); that is, some casualty which human foresight could not discern, and from the consequences of which, therefore, no protection could be provided.

If the statements of the witnesses for the defendant are to be believed, the fracture of the mare's leg was not occasioned by any defect in the stable in which she stood—for they, and the innkeeper also, testified to its good condition—but was the result of accident entirely, falling upon the leg in the endeavor by the mare to get up.

If it was broken in that manner, then it could not have been prevented by any care or previous provision by the innkeeper. You must disbelieve this testimony entirely if you give credit to that of the plaintiff, who swears to a hole made by a broken board in one side of the stall—in which state it might be supposed that the mare got her leg in that hole, and thus it was broken. You have three witnesses to one that there was no hole at all; but still you may consider the evidence of that one of greater weight than that of the three others. The plaintiff, however, and the defendant are both interested witnesses, and stand alike with the bias of interest upon their minds.

Until of late parties to a suit could not be witnesses, from risk of perjury. The risk still exists, although the law has been changed; but the jury are to judge of their credit, according or not as their statements are corroborated, or, from all the circumstances, they appear to be correct.

The mare was certainly lame in that leg when she came to the stable, by all accounts, though the statements as to the degree of lameness differ. She had come but eighteen miles, however. There is, I believe, no evidence before you that a horse with good limbs would be likely to fall lame, more or less, in a drive of eighteen miles; and there was no agreement of counsel in that respect. This is matter of experience and observation; among the qualities of a beast worth $200 it would seem there should be one that it can stand, without lameness, a drive of eighteen miles. The theory of the defendant is that the lameness arose from previous injury to the leg; and scars upon it at the place of the fracture were sworn to in behalf of the defendant, as existing at the time the mare came to be bathed and rubbed with the liniment the plaintiff had brought with him to the inn. That of the plaintiff is that it arose wholly from the drive that afternoon. The shoe from the foot on that leg was removed by the groom, upon the request of the plaintiff; but if the testimony of the groom is to be believed, that gave no relief, for the mare appeared down to the time of the accident to be in great misery. The plaintiff also swore, as suggesting a cause of the broken leg, that there was a horse in an adjoining stall; but the defendant and his groom swore to the contrary.

Having instructed you that, in contemplation of law, the

plaintiff was a guest of the inn at the time of the causality to his mare, which was entertained there, the question for you to decide is this: Was the breaking of the mare's leg a pure accident; that is, a causalty in no degree chargeable to any act or omission of the defendant or his groom? An innkeeper is, like a common carrier, an insurer of the goods of his guest. When such liability is the subject of an action, he is deemed in law to be *prima facie* responsible, so that if a plaintiff proves himself a guest, in a legal sense, and sustains a loss while that relation exists, the inkeeper's obligation to pay for it at once becomes perfect, unless he can show that the loss occurred by the act of God, the enemies of the country, or the fault or misconduct of the plaintiff or his servants or friends of his company as before stated. Nothing short of inevitable accident, casualty of war, or act of the plaintiff, his servants or such friends, will excuse him.

This is, apparently, hard law; but were it otherwise, the property of guests at an inn would be in such insecurity from the practices of dishonest landlords, with corrupt servants, that the necessity of travel would be encountered with dread and apprehension. Public policy demands that the necessities of intercourse by travel shall not involve danger of loss from innkeepers, any more than from common carriers, who are liable to those employing them exactly as innkeepers are to their guests; and they alike have a right to protect themselves by special contract not contravening such policy, and have also the important privilege of retaining the property for which their liability exists until their charges in the one case for the entertainment given, and in the other for the carriage of the goods, are paid. Neither a livery stable keeper nor a private carrier has by the common law any such privilege. He may excuse himself by showing due diligence.

Should you discredit the testimony of the defendant and his witnesses and refuse to ascribe the calamity that happened to the mare to unavoidable accident, which no care or attention could guard against under the circumstances, then your verdict should be for the plaintiff, for the value of the mare in her condition of lameness at the time she was delivered to the innkeeper; but if you do not discredit the defendant's witnesses and believe that the mare broke her leg as stated by falling down upon it in attempting to

rise in the stable, then it should be for the defendant. Should you find for the plaintiff, your verdict may include a sum of money beyond the value of the mare, as and for further damages, which sum would be, as fixed in like actions, the amount of interest the principal sum (or value of the mare) would draw from the time of her loss till the present time.

With respect to the legal conclusions we have arrived at in our examination of the authorities cited and others also, we have to say, in our opinion those presented by the counsel for the plaintiff fully justify the claim of his client, and are greatly in preponderance over those offered by the other side, which would be ample for the defendant's contention, if they were not opposed by such an array of potent decisions in hostility to them. And we may say, we trust with a due sense of the gravity of the observation, that we think the report of *Calye' Case*, 8 Coke, Rep., 32a., did not justify the opinion of it expressed by some eminent judges, particularly Justice Story, in treating of the law concerning innkeepers. Lord Coke certainly we think did not mean that an innkeeper was not an insurer, or he would not have used the language immediately following, that relied upon by Justice Story, in support of his theory of qualified liability beyond that of a carrier. His meaning seems to be that ascribed to his language by a learned California judge in *Mateer v. Brown*, 1 Cal., 221.

Verdict for the defendant.