CITY OF ATLANTIC CITY v. FREDERICK HEMSLEY, PROSECUTOR.

Argued February 18, 1908—Decided June 8, 1908.

Under section 14, subdivision 27, of the city charter of Atlantic City (*Pamph. L.* 1902, *p.* 293), the city council of the city has no power to pass an ordinance imposing a sleeping-room license tax upon a hotel that is licensed by the city council of the city as an inn and tavern and to sell intoxicating liquors, and is so conducted.

On *certiorari.*

Before Justices GARRISON, SWAYZE and TRENCHARD.

For the prosecutor, *John B. Slack* and *Gilbert Collins.*

For the defendant, *Harry Wootton.*

The opinion of the court was delivered by

TRENCHARD, J. The prosecutor of this writ of *certiorari* was convicted before the recorder of the city of Atlantic City of "conducting the business of boarding-house and hotel," without a license therefor, in violation of an ordinance of the city of Atlantic City, entitled "An ordinance governing, regulating and fixing fees of mercantile licenses in Atlantic City, N. J., and regulating the business licensed," approved May 11th, 1904.

It is contended that the business conducted by the prosecutor was not forbidden by an ordinance lawfully enacted.

The ordinance in question provides as follows:

"Sec. 1. Be it ordained by the city council of Atlantic City, that on and after June 1st, 1904, the fees to be paid annually to Atlantic City for a license to conduct the different kinds of business herein mentioned within the limits of Atlantic City shall be as follows: Boarding-houses, cottages and hotels, for each sleeping-room, .50."

The ordinance further provides that it shall be unlawful to

conduct any business required to be licensed without a license therefor, and a penalty for its violation.

A city, when authorized by its charter or by the general incorporation laws of the state, may impose licenses and business taxes upon natural persons or corporations. This power, however, is not inherent in municipal corporations, and it will never be held to exist unless conferred in express terms or by necessary implication. 21 *Am. & Eng. Encycl. L.* (2d ed.) 782, 783.

The act adopted by the city as its charter, under which the ordinance in question was passed, is found in *Pamph. L.* 1902, *p.* 284.

Section 14, subdivision 27, thereof provides as follows:

"The city council of such city shall have power to make, * · * * ordinances for the following purposes: * * * To license and regulate cartmen, porters, hacks, street cars, omnibuses, automobiles, stages, and all other carriages and vehicles used for the transportation of passengers, baggage, merchandise and goods and chattels of any kind; and the owners and drivers of vehicles and means of transportation; also auctioneers, common criers, hawkers, peddlers, pawn-brokers, junk-shop keepers, keepers of bath-houses, boarding-houses and news-stands, sweeps, scavengers, travelling and all other shows, circuses, theatrical performances, plays, billiard tables, pool tables, organ grinders, exhibitions, concerts, public places of amusement for gain, skating rinks, itinerant venders of merchandise, medicines and remedies, lumber and coal yards, stores for the sale of groceries, dry goods and merchandise and goods and chattels of every kind, and all other kinds of business conducted in such city; the place or places or premises in which or at which the different kinds of business or occupations are to be carried on or conducted, and to fix the amount of fees to be paid for such licenses and to prohibit all persons and places and all vehicles unlicensed from acting, using or being used in said capacities or for such uses and purposes; and that the fees for such licenses may be imposed for revenue."

The power of city council, under that section, to impose a license fee upon boarding-houses is not challenged.

But the place complained of is a hotel, known as the "Hotel Brighton," and it is insisted that under the act in question the city has no power to pass an ordinance imposing a sleeping-room license fee or tax upon the hotel.

If the above-recited section of the city charter stood alone, the power of the city to impose such a room license fee or tax upon hotels might exist in view of the general language "all other kinds of business," notwithstanding hotels are not specifically mentioned. 21 *Am. & Eng. Encycl. L.* (*2d ed.*) 786.

But, however that may be, we think the power did not exist for the reasons we will now state.

By the charter (*Pamph. L.* 1902, *p.* 298, § 20) the city has the power to license the sale of intoxicating liquors, and by section 115 thereof, the power to license inns and taverns, conferred by its charter of 1854 (*Pamph. L., p.* 278), was expressly reserved. *Conover* v. *Atlantic City,* 44 *Vroom* 596.

In pursuance of such power the city granted the prosecutor a license to keep an inn and tavern and to sell intoxicating liquors at the Hotel Brighton for a term covering the time referred to in the complaint in this case.

Not only was the place in question licensed as an inn or hotel, but it is so conducted. It advertises as a hotel and receives all unobjectionable travelers who are willing to pay an adequate price. It supplies liquors to its guests; has spare bedrooms and stables; keeps a public register; runs a coach to the railroad stations, and has all of the essentials which distinguish an inn or hotel from a boarding-house. *Martin* v. *State Insurance Co.,* 15 *Vroom* 485.

Generally speaking, the distinction between an inn and a boarding-house is that into the former all travelers have a right to enter and demand accommodation, but the keeper of a boarding-house has a right to select his guests. *Beall* v. *Beck,* 3 *Cranch C. C.* 666; *Pinkerton* v. *Woodward,* 33 *Cal.* 557; *Commonwealth* v. *Cuncannon,* 3 *Brews.* 344.

Whether or not a particular place is an inn or a boarding-house is a question of fact depending on the intention of the proprietor. The right of the traveling public therein depends on that intention as evinced by the character of the business there conducted. That the Hotel Brighton is an inn or hotel—not a boarding-house—is conclusively established by the proprietor having taken out a license therefor, and by the character of the business there conducted. It cannot be successfully contended that one may keep an inn and tavern in a boarding-house. The license, *ipso facto,* characterizes the place.

It was essential to the grant of the license to the inn or hotel that it should have at least two spare beds and be well provided with house room for the accommodation of guests. *Amerman* v. *Hill,* 23 *Vroom* 326.

The number of these bedrooms is not limited, nor can it be, but must vary in accordance with the number of guests coming to the inn to be entertained. So, consequently, the granting of the license by the city to the prosecutor to keep an inn and tavern at the Hotel Brighton of necessity requires and allows him to keep bedrooms for the accommodation of his guests, and the city, having granted him such license, cannot tax him again for something which he already has a license to do. The rule is that a person who has taken out a license for, or paid a tax on, a certain business cannot be compelled to take out another license or pay another tax for anything which constitutes an essential part of such business. 21 *Am. & Eng. Encycl. L.* (*2d ed.*) 814.

In view of the fact that the premises in question were licensed as an inn or hotel by the city, under the powers conferred by its charter, and that it was essential to such grant, and to the maintenance of such inn or hotel, that it should have spare rooms for the accommodation of its guests, and of the further fact that the section of the city charter, under which the ordinance in question was passed, does not specifically empower the city council to pass ordinances imposing a sleeping-room tax upon inns or hotels or to otherwise license or regulate the same, we think that the power to enact the

ordinance in question, so far as it applies to hotels, is at least doubtful.

Statutes delegating such power are to be construed strictly, and if there is any doubt as to the existence of the power it must be resolved in favor of the public and against the city. 21 *Am. & Eng. Encycl. L. (2d ed.)* 783.

Accordingly, we hold that the city council was without power to impose the room tax upon the hotel in question by the ordinance under review.

The conviction is therefore set aside, with costs.

Mr. Justice Garrison dissents.